Whaley, Judge,
delivered the opinion:
Plaintiff, a common carrier, transported during the years 1920, 1924, and 1925, at the request of officers of the War Department, various shipments of fixed ammunition, combination fuzes, and dummy hand grenades from Curtis Bay, Maryland, to the Government Proving Ground at Savanna, Illinois. The shipments were made on Government bills of lading and the plaintiff, as the last carrier, was entitled thereunder to be paid for the through service. Plaintiff accordingly submitted its bills to the proper officers, but was refused settlement by the General Accounting Office at the rates stated therein, the General Accounting Office asserting lower rates, and causing payment to be made on the lower basis. For the resulting difference plaintiff now sues.
One of these shipments, consisting of fixed ammunition, moved beginning August 24, 1920. On that date there was in- effect a rate of 42.5 cents per hundredweight, minimum weight 40,000 pounds, published as a “ commodity ” rate on fixed ammunition by F. S. Davis, as agent of the interested lines, in his commodity tariff I. C. C. A-16, which was duly filed with the Interstate Commerce Commission. Plaintiff received settlement at this rate, and contests it on the ground *259 that the shipment was, in fact, high explosives. Plaintiff insists that the commodity rate so named on fixed ammunition does not apply and must be excluded by the Baltimore & Ohio Railroad Company’s exceptions to the carriers’ Consolidated Freight Classification No. 1 or reissues thereof. These exceptions, duly published and filed, provide for a rating of first class, carload, minimum weight 20,000 pounds on “ high explosives, viz: explosive projectiles,” which is higher than the commodity, rate on fixed ammunition and is the rate billed by plaintiff against the Government in the first instance, and now relied upon.
The shipment under discussion was explosive projectiles and explosive projectiles carry the first-class rate under plaintiff’s tariff, but the shipment also was fixed ammunition, and fixed ammunition under plaintiff’s tariff carries the commodity rate. Plaintiff’s tariff also provided that where there is a class rate and a commodity rate on the same article shipped, the commodity rate should be the one applied.
We do not find it necessary to decide which of two conflicting rates apply, for in our judgment there is no conflict. Rule 38 of the consolidated freight classification provides that “ whenever a carload * * * commodity rate is established it removes the application of the class rates to or from the same points on that commodity in carload quantities.” To apply the class rate to the exclusion of the commodity rate, as plaintiff contends should be done, would be in plain violation of this rule. The class rate could be applied, if at all, only under authority of the tariff which, in view of the published commodity rate, expressly prohibits its application. The validity of this rule is supported by the rules and regulations of the Interstate Commerce Commission (Rule 7 (a), tariff circular 18-A) which provide:
“7. (a) In every instance where a commodity rate is named in a tariff upon a commodity and between specified points such commodity rate is the lawful rate and the only rate that may be used with relation to that traffic between those points, even though a class rate or some combination may make lower. The naming of a commodity rate on any article or character of traffic takes such article or traffic *260 out of tbe classification and out of the class rates between the points to which such commodity applies.”
It is said in United States Industrial Alcohol Co. v. Director General, 68 I. C. C. 389, 392: “ Commodity rates take preference over class rates and specific commodity rates take preference over general commodity rates.” See also Augusta Veneer Co. v. Southern Ry. Co. et al., 41 I. C. C. 414, 416.
The commodity tariff set up by defendant, Agent Davis’ I. C. C. A-16, supra, on which the accounting officer made his settlement, uses the term “Ammunition, Fixed.” It is not further restricted in the tariff, and this court can not restrict it to other than “ ammunition for cannon with explosive projectile.”
Whether the fixed ammunition transported by plaintiff was low explosives, or high explosives, is immaterial. It must be conceded, of course, that it was explosive.
In reviewing the.evidence counsel for plaintiff advert to the regulations of the Interstate Commerce Commission for the transportation of explosives and other dangerous articles by freight. (Act of March 4, 1909, 35 Stat. 1088, 1135, Sec. 232; Act of March 4, 1921, 41 Stat. 1444, 1445, Sec. 235; Paragraphs 1604, 1605, 1607 (a), 1609, 1641, 1652 of Interstate Commerce Commission Begulations for the Transportation of Explosives and other Dangerous Articles by Freight, revised, effective November 1, 1918, and paragraphs 227, 228, 230 (a), 704, 801 of identically entitled regulations effective January 1, 1923.) It is not disputed that these regulations were followed. As regards the shipment here in controversy they do not govern the rate, but are merely for the purpose of guarding carriers and the public generally against improper handling and shipment of explosives. United States v. Gulf Refining Co., 268 U. S. 542. It can not be said that were the regulations violated the shipment would take any lower rate. How, then, can it be said that conscientious observance of the regulations has the effect of imposing a higher rate? Compliance with the rules and regulations of the Interstate Commerce Commission can not make the shipment other than what it is.
*261 As was said in the case of United States v. Gulf Refining Co. (supra), “ The description of the shipments as gasoline under these regulations had no tendency to show' that the tariff rate on wn/refined naphtha was not applicable. The purpose of the regulations was to require a disclosure of the character of the shipment, haring regard not to rates hut to the dangers to he guarded against. It was not an admission on the part of defendant that the gasoline rate was applicable or that the shipments were not unrefined naphtha within the meaning of the tariff.” (Italics ours.)
There is no suggestion of concealment, misrepresentation, or incorrect description. There is nothing in the record to indicate that the carriers were not advised as to everything essential to transportation and determination of the charges therefor.
Necessarily the true description of a shipment governs the rate, otherwise carriers would, in cases of false description, be collecting different rates on like articles. This they are prohibited from doing. Section 6, Interstate Commerce Act (act of June 29, 1906), 34 Stat. 584, 587 (United States Code, title 49, section 6). The bill of lading may not defeat the legal rate. The interstate commerce act “ ignores the bill of lading and makes the published tariff rate binding.” Gulf, Colorado &c. Railway v. Hefley, 158 U. S. 98, 102.
For the shipment of fixed ammunition originating August 27, 1920, the commodity rate thereon was 59.5 cents per hundredweight, an increase effected by Supplement No. 13 to Agent Davis’ aforesaid tariff 1. C. C. A-16. At this rate the Government made its settlement and for the reasons just stated we think the basis used was correct. The accounting officer, however, was short in his settlement to the extent of $65.53, and this amount plaintiff is entitled to recover.
As to the shipments of fixed ammunition, moving in 1924 and 1925, not loaded with other commodities, Agent H. Wilson’s commodity tariff I. C. C. A — 111 governs, and this carried a rate of 54.5 cents per hundred pounds. The accounting officer correctly settled at this rate.
Bill of lading WQ. A 1147927, dated April 28, 1925, covered a mixed carload, consisting in part of fixed ammunition. *262 the residue being combination fuzes which were not fixed ammunition. Rule 10 of the classification tariff provided that when a number of different articles, for which carload ratings or rates were provided, were shipped in a carload they would be charged at the carload rate applicable to the highest classed or rated article, and the carload minimum weight would be the highest provided for any of the articles in the carload. Fixed ammunition, as heretofore stated, took a rate at this time of 54.6 cents, minimum weight 40,000 pounds. Combination fuzes were rated at $1,075 (third class, see Finding VII), minimum weight 30,000 pounds. Under Rule 10, just referred to, the charges would therefore be computed by the application of the higher rate of $1,075 to the higher minimum weight of 40,000 pounds. On this basis plaintiff has been paid.
The remaining shipments consisted of dummy hand grenades, used in practice. They were not explosive, and were not fixed ammunition. The Comptroller General rated them as iron or steel castings, further advanced than in the rough, using fourth-class rate of 74 cents per hundredweight. This we think was in error, and apply fifth-class rate of 63 cents, which is the rate under Curlett’s tariff . I. C. C. A-79, on empty or solid projectiles, not explosive, other than small arm. The grenades were empty, were used as projectiles, and were in fact nonexplosive empty projectiles, other than small arm. On this item the plaintiff was overpaid $77.53. (Finding V.) This the defendant is entitled to recover, notwithstanding no formal counterclaim has been filed therefor.
In Wisconsin Central R’d v. United States, 164 U. S. 190, 212, it is held, “ Moreover, it has been repeatedly held that the forms of pleading in the Court of Claims are not of so strict a character as to require omissions of this kind to be held fatal to the rendition of such a judgment as the facts demand.” See also Florida Cent. & Pen. R. Co. v. United Stales, 43 C. Cls. 572.
Judgment for defendant in the sum of $12. It is so ordered.
Williams, Judge; LittletoN, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.