**WHITE v. UNITED STATES.**

No. 49621.

United States Court of Claims.

Feb. 5, 1952.

Fred W. Shields, Washington, D. C., King & King, Washington, D. C., on the briefs, for plaintiff.

Leroy Southmayd, Jr., Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

586

JONES, Chief Judge.

Plaintiff here sues for certain retirement pay to which he asserts a right under the act of June 30, 1941, 55 Stat. 394, as amended by the act of May 4, 1945, 59 Stat. 135.

Plaintiff was discharged from the Regular Army in 1935, because of permanent physical disability. At the time of his discharge he was a corporal in the fifth pay grade, with over 20 years' active service in the Army, including service as a commissioned officer in the grade of second lieutenant between August 1, 1918, and February 5, 1919. There was no provision in the law in 1935 whereby he might be retired, and instead he received a discharge from the Army. He did, however, receive 100 percent disability compensation from the Veterans' Administration from that time until September 1, 1949.

In 1941 there was enacted into law provision for retirement of enlisted men then in the Regular Army who had over 20 years' active service and who were permanently incapacitated, 55 Stat. 394, and in 1945 that law was amended, 59 Stat. 135, to include persons such as plaintiff who had been discharged prior to the 1941 act. On August 26, 1949, plaintiff submitted formal application for retirement, and on August 31, 1949, he was placed on the Regular Army retired list. Effective the same day he was advanced on the retired list to the grade of second lieutenant, under the provisions of the act of May 7, 1932, 47 Stat. 150, 10 U.S.C.A. § 1028c, as a result of his commissioned service during the first World War. On September 27, 1949, plaintiff filed a claim with the Department of the Army for the difference in retired pay and the disability compensation paid to him, for the period May 4, 1945, to August 31, 1949. This claim was disallowed.

It is plaintiff's contention that the amendatory act of May 4, 1945, supra, gave to him a right to retired pay from the date of its passage, even though he did not make formal application for it until August 26, 1949, and though his name was not formally placed on the retired list until August 31, 1949. He seeks recovery here of retired pay computed pursuant to 49 Stat. 1900, 10 U.S.C.A. § 981, for the period May 4, 1945, to August 31, 1949, less the amount of disability compensation actually paid to him for that period.

Plaintiff concedes that ordinarily retirement is effective only from the date upon which the transfer to the retired list is made, but emphasizes that this case does not present the usual retirement situation of a man retired directly from active service, but involves a man who was not eligible for retirement under the law as it existed at the time of his separation from active service, and as to whom there was no provision in law for retirement until some ten years later.

■ Notwithstanding the usual practice under other retirement legislation, it is, of course, the specific statutes, 55 Stat. 394, as amended by 59 Stat. 135, which must control the disposition of this case. As remedial legislation they are to be liberally construed. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Boone v. Lightner, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587; Hornblass v. United States, 93 Ct.Cl. 148, 156. And we believe that the Congressional intent disclosed in the statutes and their legislative history lends support to plaintiff's claim. The original act of June 30, 1941, 55 Stat. 394, provided in part as follows: "Sec. 2. An enlisted man of the Regular Army or of the Philippine Scouts who has served twenty years or more in the military forces of the United States and who has become permanently incapacitated for active service due to physical disability incurred in line of duty shall be placed on the retired list."

It applied only to men on active duty at the time of its passage. In the usual case those men would continue on active duty until retired, and their right to retired pay, as an incident of retired status, would begin immediately upon the cessation of their active duty status. It was a perfectly good piece of legislation and adequately expressed the intention of Congress, so far as the nature and extent of the rights con-

ferred were concerned. It failed, however, to include otherwise qualified enlisted men who had been discharged prior to its passage.

And so by the 1945 amendment, 59 Stat. 135, there was added to the 1941 act the following clause: "*Provided,* That this Act shall apply to all former enlisted men of the Regular Army and the Philippine Scouts who have served for twenty years or more, and who were honorably discharged therefrom by reason of becoming permanently incapacitated for active service due to physical disability incurred in line of duty: * * *"

The act as amended, however, was not completely specific as to the date of accrual of retired pay rights of persons added by the 1945 act who had been separated from active service prior to June 30, 1941.

It is evident that to some extent at least Congressional attention had been called to the general problem as to when the pay rights under the 1945 act should accrue. As originally introduced, H.R. 1701, 79th Cong., 1st Sess., which became the act of May 4, 1945, placed no limitation whatsoever upon the periods for which these men would be entitled to retired pay. But the Secretary of War in a letter to the House Committee on Military Affairs stated that the bill "should be amended to conform to the basic law, and should definitely preclude the payment of benefits to the persons contemplated therein for any period prior to its enactment." H.Rept. 287, 79th Cong., 1st Sess. This the Committee did, and the Congress approved and retained the very language suggested by the Secretary of War: "*Provided further,* That any former enlisted man placed upon the retired list in accordance with the provisions of the foregoing proviso shall not be entitled to receive retirement pay for any period prior to the effective date of this amendment." [59 Stat. 135]

Congress could have expressly provided in the 1945 act for retirement pay from the date of separation from active service, as was the usual retirement situation, or from the date of enactment of the 1945 act, or from the date of application for retirement thereunder, or indeed from any other date which Congress might fix. But what Congress did provide was that no pay should accrue for any period prior to the effective date of the act. Thus the implication is very strong that rights to retired pay should accrue for the period beginning with the effective date of the act.

It was only through an oversight that no provision for persons such as plaintiff had been made in the 1941 act, and the 1945 act was intended to remedy that defect. Bearing further on the intention of Congress are the reports of the House and Senate Committees on Military Affairs to their respective Houses, both of which contain the following: "Public Law 140 of the Seventy-seventh Congress, approved June 30, 1941, had for its purpose the giving of certain retirement benefits to enlisted men of the Regular Army and of the Philippine Scouts who, having had at least 20 years' service in the military forces of the United States, had been placed on the retired list by reason of permanent disability received in line of duty. Apparently through an oversight, no provision was made in that act for similar cases who had been retired prior to the approval of the act. The present bill seeks to extend the same benefits to similar persons similarly disabled who were retired prior to June 30, 1941, with the provision, however, that no benefits shall have accrued prior to the approval of the proposed amendment. [H. Rept. 287 and S.Rept. 183, 79th Cong., 1st Sess.]"

It would be ironic indeed if as to plaintiff, discharged without retirement benefits in 1935, and overlooked in 1941, those benefits were once again postponed, and under an act designed with the express purpose of extending them to him.

There is no indication that Congress intended that under the 1945 act the right to retired pay should accrue only upon retirement at some time after the passage of the act, as defendant contends. On the contrary men in plaintiff's situation were actually referred to by the committees and in the House as already having been "retired". Ibid.; 91 Cong.Rec. 2419, 79th Cong., 1st Sess. That usage was a technical inaccuracy to the extent that "retired" status

differs from "discharged" status, see for example, United States v. Union Pac. R. R. Co., 249 U.S. 354, 358, 360, 39 S.Ct. 294, 63 L.Ed 643, but it emphasizes nevertheless that Congress neither contemplated nor intended that pay rights would vest only for the periods beginning with some future change to retired status. As far as Congress was concerned the passage of the 1945 act woud do everything that was necessary to give pay rights to these men.

Defendant relies upon the rule that the effective date of retirement of a member of the Regular Army is governed by the date of the approval by competent authority of his retirement, unless there is some other date fixed in the order, and to support that rule cites Holland v. United States, 83 Ct. Cl. 376; Greenwald v. United States, 88 Ct. Cl. 264, and a number of other cases following the Greenwald case. Therefore, according to defendant, inasmuch as plaintiff's retirement was not approved by the Army until August 31, 1949, no right to retired pay for any period prior to that day could accrue. That this is not always a necessary result, see Hamrick v. United States, 96 F.Supp. 940, 120 Ct.Cl. 17. All of the cases relied upon by defendant involve the usual retirement situation of a man retired directly from active service. Their application here to defeat recovery by plaintiff would be contrary, we believe, to the intent of Congress in passing the 1945 act.

Defendant contends further that the act of May 4, 1945, did not authorize retroactive retirement, that there was no order purporting to retire plaintiff retroactively, and that the act was not self-executing so as automatically to confer upon plaintiff a retired status.

█ It may be noted that various other retirement statutes in effect at the time of the passage of the 1945 act provided for retirement upon application to the President, 10 U.S.C.A. §§ 942, 947, 947a; upon application, in the discretion of the President, Id., § 943, or in the discretion of the Secretary of War, Id., § 943a; or merely in the discretion of the President, with no mention of any application, Id., § 944; upon request, under such regulations as the Sec-

retary of War may prescribe, Id., § 948, or when retiring board findings are approved by the President. Id., §§ 933, 934. The statutes here involved provide that qualified enlisted men "shall be placed on the retired list." The only limitation is that no pay should accrue for any period prior to May 4, 1945. We believe the inference of any further limitation on pay rights would be inconsistent with the obvious intent of Congress, which was that retired pay under the 1945 amendment should date from the effective date of that amendment. Plaintiff having made application therefor, and having been placed on the retired list, is entitled to receive retired pay from May 4, 1945. The failure to issue a retroactive order did not affect that right. See Hamrick v. United States, supra, 96 F.Supp. 940, 120 Ct.Cl. at page 26.

Defendant also asserts that the provision in the 1941 act empowering the Secretary of War to make regulations thereunder indicates that rights were to vest only in accordance with those regulations. Section 6 of the 1941 act, 55 Stat. 394, 395, provided: "The administration of this Act shall be under such regulations as the Secretary of War shall prescribe."

But that section does not purport to either limit or enlarge the rights provided under the law, and regulations issued thereunder could not operate in conflict with those rights. United States v. Symonds, 120 U.S. 46, 7 S.Ct. 411, 30 L.Ed. 557.

Defendant says also that each candidate for retirement woud have to be investigated to determine if he had become "permanently incapacitated for active service due to physical disability incurred in line of duty" and was in other respects eligible for disability retirement under applicable regulations. But an investigation, while a necessary and proper procedure in administering the act, could only confirm or deny th existence of the facts prerequisite to entitlement, i. e., whether plaintiff was a former enlisted man in the Regular Army who had served 20 years or more and who had been honorably discharged therefrom by reason of permanent disability incurred in line of duty. Once these facts are determined to exist there could be no disapproval

by the Army of plaintiff's retirement. His retired pay should be dependent not upon the date of approval but upon the existence of the qualifying facts. Under the statutes here involved an investigation could be only an administrative precaution to insure the identity of plaintiff as one in whom the act had vested the right to retired pay, and not in itself a prerequisite to vesting of that right.

It is defendant's further argument that at no time prior to August 26, 1949, did plaintiff ever make an election to receive retired pay and waive receipt of Veterans' Administration disability compensation. Defendant contends that Section 4 of the 1941 act, supra, 38 U.S.C.A. § 26b, provides for such an election.

Section 4 does provide that, for the purpose of receiving Veterans' Administration pension or disability compensation, a man retired under the act may file with the War Department a waiver of retired pay. It also provides that once such waiver has been filed, he may thereafter waive the pension or disability compensation for the purpose of receiving retired pay. But it does not require the filing of a waiver of disability compensation in order to receive retired pay in the first instance. So plaintiff's failure to file a waiver of disability compensation here does not constitute a waiver under Section 4 of retired pay. The obvious purpose of that section, in addition to preventing concurrent payments, is to permit plaintiff to receive the higher rate, whether it be retired pay or disability compensation, and we believe that purpose is fully effectuated by granting him recovery of retired pay for the period in question, less the amount of disability compensation received for that period.

There is somewhat of a parallel between this case and Dugan v. United States, 100 Ct.Cl. 7. In Dugan v. U. S., there was an error, and here an oversight, which Congress sought to correct by remedial legislation. In each case the defendant sought to restrict the remedial effect of that legislation. We allowed Dugan to recover retired pay dating not merely from the date of correction of the error but all the way back to the time the error had been committed. See Dugan v. U. S., supra, 100 Ct.

Cl. at page 13. See also Womer v. United States, 114 Ct.Cl. 415, 84 F.Supp. 651, and Hamrick v. United States, supra, where retired pay was recovered for periods prior to the date plaintiffs' names were placed on the regular retired list. Plaintiffs there had been placed on the honorary retired list without pay, and on the inactive list, respectively, due to incorrect findings reported by their original retiring boards. But in the instant case we are expressly prohibited from awarding pay for any period prior to the effective date of the 1945 act, by the proviso inserted at the request of the Secretary of War.

Plaintiff, therefore, is entitled to judgment for the amount of retired pay he should have received from May 4, 1945, to September 1, 1949, computed under 49 Stat. 1900, less the amount of any disability compensation received from the Veterans' Administration for this period.

By stipulation of the parties, entry of judgment will be suspended to await the filing of a report from the General Accounting Office showing the amount due plaintiff in accordance with this opinion.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.