**PRICE v. UNITED STATES.**

No. 49681.

United States Court of Claims.

April 15, 1952.

See also 100 F.Supp. 310.

Madden, J., dissented.

Samuel T. Ansell and Burr Tracy Ansell, Washington, D. C., for plaintiff.

Wilson Myers, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., Thomas O. Fleming, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

On October 2, 1951, this court made special findings of fact and determined that plaintiff's service in the National Guard prior to 1916 was service in the "federally recognized" National Guard within the meaning of the Army and Air Force Vitalization and Retirement Equalization Act of June 29, 1948, 62 Stat. 1081, 10 U.S.C.A. § 580 et seq. Plaintiff thus became entitled

to retired pay under that act. Entry of judgment was suspended pending computation of the amount due by the General Accounting Office. The Assistant Comptroller General has filed his reply to which plaintiff has made certain objections here under consideration.

The formula for computation of retired pay under that act is provided in Section 303, 62 Stat. 1088, 10 U.S.C.A. § 1036b, and in the instance of plaintiff, all of whose service was prior to July 1, 1949, depends upon the number of years of "active Federal service," plus a credit of fifty days for each year of membership in a reserve component prior to July 1, 1949. Plaintiff's first objection here is to the exclusion by the General Accounting Office from its computation of plaintiff's active Federal service of periods of drill and target practice attended by plaintiff while a member of a reserve component. From 1903 to 1933 plaintiff attended a total of 1,443 drills and target practice of the Pennsylvania National Guard, for which he claims a credit of 1,-443 days of active Federal service.

Section 303 provides in effect that the time factor in the formula for computation of retired pay shall consist of the sum of the following:

| *Each Year After July 1, 1949* | *Each Year Prior to July 1, 1949* |
|---|---|
| 1 day for each day of active Federal service. | 1 day for each day of active Federal service. |
| 1 day for each day of drill, not exceeding 45. | |
| 15 days for each year of membership in a reserve component. | 50 days for each year of membership in a reserve component. |

Thus are we led to the conclusion that the drills and target practices here in question—all of which were prior to July 1, 1949—did not constitute active Federal service within the meaning of the act. First, the act clearly regards drills (or periods of equivalent instruction) as separate and distinct from periods of active duty, since they are placed in separate categories for the purpose of credit after July 1, 1949. If drills are not regarded as active service after July 1, 1949, the necessary conclusion is that they were not so regarded for pe-

riods prior to July 1, 1949. Second, if drills were regarded as active service after July 1, 1949, then all drill periods after July 1, 1949, would be credited twice, once as active service under the first item, and again as drill periods under the second. Such a result would not comport with reason.

In addition the act provides that for periods after July 1, 1949, a maximum of sixty days' credit should be allowed in any one year for combined drills and membership credit. If plaintiff's contention were correct, that separate credit was available for drills prior to July 1, 1949, then a maximum of 110 days combined drills and membership credit would be available for each year prior to July 1, 1949—fifty days' credit for membership, and up to sixty days' credit for drills. (Apparently sixty was the maximum number of drills held in any year.) There is no indication whatsoever in the act of any intention or reason to so discriminate between service prior and service subsequent to July 1, 1949.

It will be noted that the credit for membership in a reserve component, which for each year prior to July 1, 1949, was fifty days, was reduced to fifteen days for each year subsequent to that date. Accompanying that reduction was the express allowance of an additional credit for drills, which credit had not been allowed for the prior years. In other words, while one credit was reduced there was a new compensating credit added. It may well have been as the Assistant Comptroller General suggested, that because of lack of drill records the framers of the act recognized the impossibility in 1948 of setting up any workable method for determination of the number of drills actually attended in the many prior years, and for that reason arbitrarily prescribed a credit of fifty days for membership, which is a near-maximum to the total sixty-day combined membership and drill credit obtainable under the standards set up for the subsequent years. Anticipating, however, that sufficiently detailed records would be available for the years subsequent to July 1, 1949,[1] making possible a credit

1. The act in question was originally passed on June 29, 1948, and referred to

service before the enactment of the act and service after the enactment of the

directly reflecting the number of drills actually attended, there was no need to maintain the arbitrary credit used for the prior years. And thus it was for the very reason that separate credit for drills was being allowed for the first time for years subsequent to July 1, 1949, that the membership credit was reduced from fifty to fifteen days. At least the Assistant Comptroller General's explanation is fully consistent with the change, effective July 1, 1949, in the method of computation for pay purposes.

Nor is a different conclusion required by section 306(d) which defines "active Federal service" to include "annual training duty." It does not appear that periodic armory drills are included within "annual training duty" and therefore active Federal service, particularly in light of the distinction made between drills and active Federal service in previous sections of the act. In this connection it may be noted that the General Accounting Office has given plaintiff credit for annual encampments as active Federal service.

We must conclude, therefore, that the drills and/or target practices in question are not properly included within "active Federal service."

The Assistant Comptroller General has also raised the question of the right of the Government to deduct from the recovery of retirement pay the Spanish-American War pension payments received by the plaintiff for the same period. The findings of fact in this case were entered pursuant to stipulation by the parties. The case was argued upon the stipulated facts and at no time did the record disclose any matter of pension. It was in the reply of the Assistant Comptroller General containing his computation of retirement pay due plaintiff that the court was advised that

"William G. Price, Jr., the plaintiff in this case, was paid a pension incident to his service in the Spanish-American War at the rate of $90 per month during the period January 19, 1949, to

October 2, 1951—the period covered by the present suit—in the total amount of $2,922.[2] [Reply of the Assistant Comptroller General, dated December 11, 1951.]"

This was the first intimation to the court that any pension had been paid or that the Government contemplated a set-off against plaintiff's retirement pay. Liability for that retirement pay had already been determined and standards therefor established. There remained only the entry of judgment.

In the reply of the Assistant Comptroller General dated December 11, 1951, he stated in effect that plaintiff had been paid a pension, that retirement pay could not legally be paid concurrently with the pension, and that

"accordingly the pension payments made to the plaintiff for the period January 19, 1949, to October 2, 1951, in the amount of $2,922, are for deduction from the amount of $5,487.55 otherwise payable under the Court's opinion, leaving a net balance payable as of October 2, 1951, of $2,565.55."

Plaintiff thereafter filed his objections to the Assistant Comptroller General's report and defendant moved to dismiss those objections. They were in part that defendant had not properly presented the question of set-off to the court, and that nevertheless plaintiff was entitled to recover the full retirement pay and at the same time retain his pension.

The act of July 13, 1943, Veterans Regulation No. 10, Par. XIII, 57 Stat. 559, 38 U.S.C.A. following § 745, specifies that

"Not more than one award of pension, compensation or emergency officers' or regular retirement pay, shall be made concurrently to any person based on his own service."

It appears that plaintiff's retirement pay is "emergency officers'" retirement pay within the meaning of Veterans Regulation No. 10, supra. Consequently plaintiff is not entitled to concurrent awards for both

---

act. By act of September 7, 1949, 63 Stat. 693, the date of July 1, 1949, was substituted for the phrase "the date of enactment of this act."

2. Plaintiff does not dispute that pension payments in the amount stated were actually made.

pension and retirement pay based on his own service. The Government is entitled therefore to deduct the amount of pension received by plaintiff from the retirement pay to which plaintiff would otherwise be entitled.

Title 28, United States Code, section 2508, provides

"Upon the trial of any suit in the Court of Claims in which any set-off, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.[3]"

Before entering its judgment the court must therefore, in accordance with the Government's demand, set off the amount of pension received by plaintiff for the period in suit against the amount of retirement pay otherwise due plaintiff. Clearly it would have been preferable to have raised this matter earlier in the proceedings. Yet plaintiff's right to pension and his alternative right to retirement pay are both based on his own military service, and in view of Veterans Regulation No. 10 prohibiting concurrent awards the court must consider that plaintiff has already received certain amounts as pension.

Plaintiff has also objected to the deduction of the pension payments on the ground that this court has no jurisdiction over a claim for pension. Title 28, United States Code, § 1501. This is not a claim for a pension, however. It is not plaintiff's right to receive the pension but his right to receive additional sums over and above that received as pension which is the real controversy. Cf. Reynolds v. United States, 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353 and McElhany v. United States, 101 Ct.Cl. 286 (where in both cases the controversy was the right of the Government to

make set-offs against sums admittedly due plaintiffs as pension, disability compensation, or insurance); and White v. United States, Ct.Cl., 102 F.Supp. 585 (where by stipulation disability compensation payments already received were deducted from retirement pay in computing the judgment).

Accordingly defendant's motion is granted and plaintiff's objections to the report of the Assistant Comptroller General are dismissed. The amount of pension payments already made for the period in suit will be deducted from the amount of retirement pay otherwise due, and judgment entered in the amount of $2,565.55.

It is so ordered.

HOWELL, WHITAKER, and LITTLETON, Judges, concur.

MADDEN, Judge, dissents from the judgment.

---

3. It may be noted that the Comptroller General may withhold from the payment of a judgment rendered against the United States the amount of any such counterclaim which was not determined by that judgment, and then institute legal proceedings to enforce that counterclaim. 47 Stat. 1516. See Hines v. United States, 70 App.D.C. 206, 105 F.2d 85.