**AMERICOLD CORPORATION (formerly, "Termicold Corporation"), Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 374–89T.**

United States Court of Federal Claims.

July 28, 1993.

Ellen C. Specker, U.S. Dept. of Justice Tax Div., Washington, DC, for U.S.

Bruce C. Hamlin, Lane, Powell, Spears & Lubersky, Portland, OR (Laurence F. Janssen, Los Angeles, CA, of counsel), for Americold Corp.

*Order*

WEINSTEIN, Judge.

Before the court is defendant's motion for leave to amend its answer to assert an offset. For the reasons stated below, the motion is granted.

*Facts*

Plaintiff, Americold Corporation (formerly "Termicold Corporation"), is a taxpayer engaged in the business of owning and operating low-temperature facilities specially designed for foodstuffs. In the taxable years 1973 through 1976, plaintiff placed in service refrigerated structures (or additions thereto) ("earlier structures") at several locations in Iowa, Idaho, Utah, and Oregon.

Plaintiff claimed investment tax credits ("ITC"), on each earlier structure in the taxable year it was placed in service, under 26 U.S.C. (I.R.Code) §§ 38 and 48(a)(1)(A).[1] In settling *Termicold Corp. v. United States*, 2 Cl.Ct. 351, plaintiff agreed to treat thirty-eight percent of the cost of the earlier structures as the cost of "building or structural components," which are not entitled to ITC credits. *See* Treas.Reg. § 1.48–1(e).

Plaintiff also placed refrigerated structures ("later structures") in service in 1977, 1978, and 1979, at Bettendorf, Iowa; Plover, Wisconsin; Milwaukee, Oregon; Moses Lake, Washington; Woodburn, Oregon; and Clearfield, Utah and claimed an investment tax credit on each later structure in the taxable year it was placed in service.

The Internal Revenue Service (IRS or Service) subsequently made a deficiency assessment with respect to the ITC claimed for tax year 1977–1979. Plaintiff paid this deficiency on July 24, 1981 and simultaneously filed a timely claim for refund. This claim was disallowed in 1987 and, after a protest and unproductive discussions

with the Service, Americold filed this refund suit on June 30, 1989.

After extensive discovery, the parties negotiated a settlement agreement. At the August 1, 1991 status conference, defendant's attorney, noting that she did not have settlement authority, indicated that she would recommend acceptance of this agreement, but that it would take some time (possibly eight months) for government approval because the large amount of money involved necessitated several levels of review. The parties agreed to stay the proceedings until the government decided whether to accept the settlement offer.

On December 15, 1992, the government filed a motion for leave to amend its answer to assert an offset to recover excess depreciation on all of the structures during the years at issue in this suit.[2] Specifically, defendant asserts that, because the structures were conceded to be "building[s]," as opposed to "other tangible property" eligible for ITC, as defined in I.R.C. § 48(a)(1)(B) (repealed 1990), if plaintiffs depreciated them over seven years (or any period less than the forty to sixty year depreciation period applicable to buildings), then plaintiffs took excess depreciation for thirty-eight percent (the proportion conceded to be "building[s]") of the earlier structures during the years at issue in this suit.

In addition, defendant contends that, if the later structures are determined to be "building[s]" and not "other tangible property," and if plaintiff depreciated them over a shorter depreciation period than is allowed, *or* if plaintiff used an *accelerated* method of depreciation,[3] additional excess

---

**1.** Section references to the I.R.Code and Treas. Regs. are to the sections in effect at the relevant time.

**2.** The issue of depreciation was first raised by defendant in a May 7, 1992 letter from the Office of Review. Plaintiff states that it responded by explaining that "an election taken in 1982 resulted in recapture and *probably* mooted the issue." (Emphasis added.) (The letter itself states that "what happened before 1982–83 is *largely* irrelevant to what happened after, and vice versa.") (Emphasis added.)

**3.** Footnote 3 to defendant's Motion for Leave to Amend Answer explains various methods of depreciation as follows:

A taxpayer using an accelerated method of depreciation, such as a declining balance method or the sum of the year-digits method, claims more of the allowable depreciation in the earlier years, and less depreciation in the later years, of the useful life of an asset, as compared to a taxpayer using the "straight line" method, *i.e.,* the method by which the same amount of depreciation is claimed during each of the years that constitute the asset's useful life. The *total* amount of depreciation claimed under an accelerated method, howev-

depreciation on the later structures may have been claimed during the tax years at issue here, *i.e.* 1977, 1978, and 1979.

Defendant claims that additional "minimal" discovery (a few interrogatories) will be necessary to determine whether short term or accelerated depreciation was taken with respect to the earlier structures.[4] Defendant argues that this discovery would not be burdensome, plaintiff having conceded that the subject was within the original scope of discovery and plaintiff having to provide this information in any event, with respect to the later structures, in order to establish its entitlement to the ITC refund it claims. That is because the amount of the "qualified investment" eligible for the ITC depends upon the useful life used in computing the depreciation allowance. *See* I.R.C. § 46(a)(1)(2) (repealed 1990), § 167. Plaintiff does not contend that extensive discovery would be required.

Plaintiff argues that defendant should be barred from asserting the offset for the excess depreciation on the earlier structures "against the settlement amount"[5] because, notwithstanding that it had "obvious opportunities" to do so,[6] defendant has never questioned the depreciation treatment of any of these structures or asked for follow up discovery on depreciation treatment. Plaintiff also claims that the offset is barred because the government has no "concrete evidence" to suggest plaintiff may have taken excess depreciation, as purportedly required by *Mahoney v. United States*, 223 Ct.Cl. 713, 718, 1980 WL 4712 (1980) and *McLennan v. United States*, 23 Cl.Ct. 99, 106 (1991).

*Discussion*

■ Under well-established precedent, a plaintiff bringing a claim in this court subjects itself to the possibility of a judgment against it on any setoff, claim, or demand the government may have against it. *See Frantz Equip. Co. v. United States*, 122 Ct.Cl. 622, 105 F.Supp. 490, 494–95 (1952) (explaining why there is no right to a jury trial on a government counterclaim):

> Suits against the government in the Court of Claims, whether reference be had to the claimant's demand, or to the defence, or to any set-off, or counterclaim which the government may assert … are not suits at common law within its true meaning. The government cannot be sued, except with its own consent. It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that *if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counterclaim, or other demand of the government, upon which judgment may go against him* without the intervention of a jury, if the court, upon the whole case, is of opinion that the government is entitled to such judgment. *If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the government to the exercise of the privilege. Nothing more need be said on this subject.*

er, does not exceed the amount claimed under the "straight line" method. I.R.C. § 167(b) (prior to amendment by §§ 11812(a) and (b)(1), Omnibus Budget and Reconciliation Act of 1990, Pub.L. No. 101–508, 104 Stat. 1388).

4. Plaintiff has provided the information requested as to depreciation periods and methods for the later structures, placed in service in 1977–1979, indicating that these were depreciated over thirty years based on the declining balance method of depreciation.

5. On the other hand, plaintiff recognizes that the settlement offer could be withdrawn and the case could proceed to trial.

6. Every tax return from 1973 through 1979 was subjected to intense scrutiny, each return was audited, and the Service had further opportunity to review the returns between 1981, when amended returns were filed and a deficiency paid, and 1987, when the Service denied claims for refund.

(emphasis added) (quoting *McElrath v. United States*, 102 U.S. 426, 439–40, 26 L.Ed. 189 (1880)).

■ While it has been held that, in tax cases, the government's right to assert a *counterclaim* is circumscribed by the statutory limitation period for the IRS's assertion of a deficiency assessment, *see Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932), the courts have recognized no statutory or other basis for limiting the government's *offset* right in tax cases. Thus, the cases consistently have held that a taxpayer seeking a tax refund in this court risks a reaudit by the government and a challenge by way of a defense in the nature of a setoff to the validity of the treatment accorded any item in the taxpayer's return, even if a new assessment for such setoff would be barred by the statute of limitations. *Missouri Pac. R.R. Co. v. United States*, 168 Ct.Cl. 86, 338 F.2d 668, 670–71 (1964) (citing *Lewis v. Reynolds*, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932)).[7]

It is often stated that the government's right to amend its answer, *e.g.*, to assert a setoff or counterclaim, in this court is subject to the "liberal pleading" standards of *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See, e.g., Tyger Constr. Co. Inc. v. United States*, 28 Fed.Cl. 35, 54 (1993).

*Foman* (relying on *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)) concluded that leave to amend "shall be freely given when justice so requires," and intimated (but did not hold, because leave was *not* denied in that case) that leave should *not* be granted if certain countervailing circumstances exist, *e.g.*, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

However, *Foman v. Davis* generally is invoked to permit the amendment and its *obiter dictum* regarding exceptions to the "freely given" standard does not require denial of the government's right to assert a setoff in this case. First, *Foman v. Davis* is distinguishable, involving a motion by *plaintiff* to amend a *complaint* (which "would have done no more than state an alternative theory of recovery"). *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Further, the complaint in *Foman* was not filed by or against the government.

■ Finally, *Foman* does not address or implicate 28 U.S.C. §§ 1503 and 2508,[8] the latter mandating ("shall")—as a condition of the government's waiver of sovereign immunity, *see McElrath v. United States*, 102 U.S. 426, 440, 26 L.Ed. 189 (1880); *Frantz Equip. Co. v. United States*, 105 F.Supp. at 495—that this court decide all claims or demands asserted by the government against a plaintiff in this court.[9] As

---

7. The rationale relied upon in the case law for permitting an equitable offset in tax refund cases is because a tax refund suit is "equitable in its function," as the "lineal successor of the common count in *indebitatus assumpsit* for money had and received." *Stone v. White*, 301 U.S. 532, 533–35, 57 S.Ct. 851, 852–53, 81 L.Ed. 1265 (1937), citing, inter alia, *Moses v. MacFerlan*, 2 Burr. 1005 (K.B.1760) and *Nash v. Towne*, 72 U.S. (5 Wall.) 689, 702, 18 L.Ed. 527 (1866). See also *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 403, 54 S.Ct. 443, 449, 78 L.Ed. 859 (1934) (not reaching issue of whether Congress had power to condition or withdraw consent of the United States to be sued). *See also McLennan*, 23 Cl.Ct. at 106 ("right of allowing an offset ... is an equitable right given to the government based on equitable principles") (citing *Missouri Pacific*). However, the government's right under §§ 1503 and 2508 is statutory.

8. 28 U.S.C. § 1503 (1988) (as amended by Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506) states: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court."

28 U.S.C. § 2508 (1988) provides (in pertinent part, emphasis added) that this court *"shall* hear and determine" ... "any set-off, counterclaim, claim for damages, or other demand ... set up on the part of the United States against any plaintiff making claim against the United States in [this] court."

9. The earliest predecessor of §§ 1503 and 2508 was the Act of March 3, 1863, 12 Stat. 765, defining the jurisdiction of this court. These statutes have been construed to permit the government to assert *any* counterclaim, even if

limitations on this court's statutory jurisdiction, these statutes must be strictly construed in the government's favor. *E.g., United States Dep't of Energy v. Ohio,* — U.S. —, —, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992).

Longstanding precedent also holds that equitable factors cannot deny the government's right to a tax offset.[10] *See Dysart v. United States,* 169 Ct.Cl. 276, 340 F.2d 624, 628 (1965): "There is no room, in this situation, to deny the government its right of setoff because the taxpayers' claim is relatively small, or the government's counter-demand will put them to a burdensome trial, or because the underlying facts ... are old and complex, or the Internal Revenue Service had a previous opportunity to assess the underpaid tax. To uphold the government's right to maintain the defense in this case, it is sufficient that the setoff involves the same type of tax, payable by these taxpayers, and for the same tax as the taxpayers' claim."

As the *Dysart* court also explains: "The theory of setoff for tax purposes seems to us to insist upon [the] result [that an offset is not subject to equitable defenses]. In a refund action, the taxpayer cannot recover unless he has overpaid his tax. It is not enough that he can prevail on the particular items on which he sues, for he may have underpaid with respect to other components entering into that tax. Only if the overall balance moves his way can he recover." *Id.* 340 F.2d at 628.

Actually, the liberal pleading rule approved by *Foman* has been relied upon to protect the government's right to plead an offset against arguments that it is precluded by missed pleading deadlines or laches. *Cf. Price v. United States,* 121 Ct.Cl. 664, 104 F.Supp. 99, *cert. denied,* 344 U.S. 911, 73 S.Ct. 333, 97 L.Ed. 703 (1952) (government entitled to offset even though not

arising under a different statute or transaction than the one at issue in the case, against a plaintiff in this court. *See Frantz Equip. Co.,* 122 Ct.Cl. 622, 105 F.Supp. 490.

**10.** Balancing the equities, in any event, does not tip the scales in plaintiff's favor: plaintiff has not claimed discovery would be burdensome; plaintiff has no right to a settlement offer, see *supra,* n. 4; and there is no evidence additional discovery would greatly delay proceedings (in fact, providing the discovery probably would have been speedier than opposing defendant's motion to amend).

Plaintiff also does not dispute that, if a structure is a building, plaintiff is entitled neither to an ITC deduction *nor* to accelerated or short term depreciation. Allowing plaintiff to retain benefits to which it is not entitled merely because the government was slow to notice the issue or to amend its answer, or because the government failed to cast the discovery net far enough does not appear consistent with equitable principles. *Precision Instr. Mfg. Co. v. Automobile Maintenance Mach. Co.,* 324 U.S. 806, 815, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945) ("[W]here a suit in equity concerns the public interest as well as the private interests of the litigants," the clean-hands doctrine assumes greater significance; "[f]or if an equity court [in such case] properly uses the maxim to withhold its assistance ... it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public.") (1905). *See Browning v. Peyton,* 918 F.2d 1516, 1522 (11th Cir.1990) ("it has been noted that 'courts of equity came into being in order to provide a forum for the granting of relief in accordance with the broad principles of right and justice in cases where the restrictive technicalities of the law prevented the granting of relief'") (citations omitted). *Cf. Campbell v. Eastland,* 307 F.2d 478, 491 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963) (discussing rationale for Fed.R.Civ.P. 55(e), prohibiting default judgments against the government unless plaintiff establishes entitlement: and noting that "taxpayers at large should not be subjected to the cost of a judgment entered as a penalty against a government official which comes as a windfall to the individual litigant"); *Marziliano v. Heckler,* 728 F.2d 151, 157–58 (2d Cir.1984) ("public fisc should be protected from claims that are unfounded but would be granted solely because the government failed to make a timely response.") (discussing Fed.R.Civ.P. 55(e)).

Barring the government from asserting this claim also appears inconsistent with the Supreme Court's recognition "[f]rom [its] earliest cases, ... that equitable estoppel will not lie against the government as it lies against private litigants." *Office of Personnel Management v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 2469, 110 L.Ed.2d 387 *reh'g denied,* 497 U.S. 1046, 111 S.Ct. 5, 111 L.Ed.2d 821 (1990). If it ever should be found to lie, it likely would be based on the government's "affirmative misconduct," which is not alleged here. See *id.; Immigration & Naturalization Service v. Miranda,* 459 U.S. 14, 17–18, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982) (finding failure of government official to act in timely manner not to be "affirmative misconduct").

asserted until just prior to judgment); *Chicago B. & Q. R.R. v. United States*, 73 Ct.Cl. 250, 1931 WL 2457 (1931), *cert. denied*, 287 U.S. 599, 53 S.Ct. 12, 77 L.Ed. 522 (1932) (government entitled to overpayment without asserting formal court claim).

In fact, "few principles are so well established as the right of the Government to recover by offset or otherwise sums illegally or erroneously paid. Moreover, it cannot be estopped from doing so by the mistakes of its officers or agents." *Lodge 2424, Int'l Ass'n of Machinist & Aerospace Workers v. United States*, 215 Ct.Cl. 125, 564 F.2d 66, 71 (1977) (citing *Wisconsin C. R.R. v. United States*, 164 U.S. 190, 212, 17 S.Ct. 45, 52, 41 L.Ed. 399 (1896)). Thus, the *Wisconsin C. R.R.* court refused to bar a counterclaim or setoff that was not pleaded, because "it has been repeatedly held that the forms of pleading in the court of claims are not of so strict a character as to require omissions of this kind to be held fatal to the rendition of such judgment as the facts demand." 164 U.S. at 212, 17 S.Ct. at 52 (citations omitted). *Cf. Cornwall v. United States Constr. Mfg., Inc.*, 800 F.2d 250, 252 (Fed.Cir.1986) (explaining that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." (*quoting Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957))).

Plaintiff's argument that rules 8(c) and 13 of the Rules of the United States Court of Federal Claims (RCFC) bar the offset is without merit. Even if this court might by such rules qualify the sovereign's statutory limitations on its waiver of immunity, *cf. Widdoss v. Secretary, HHS*, 989 F.2d 1170, 1177–78 (Fed.Cir.1993), *petition for cert. filed*, 62 U.S.L.W. 3001 (U.S. June 22, 1993) (No. 92–2032); *Rolls–Royce Ltd. v. United States*, 176 Ct.Cl. 694, 364 F.2d 415, 419 (1966) (both invalidating the use of court rules when such use had the effect of expanding the court's subject matter jurisdiction), these rules do not apply.

RCFC 8(c) concerns affirmative defenses and is not applicable here because the government does not have the burden of proving the offset. *Lewis v. Reynolds*, 284 U.S. at 283, 52 S.Ct. at 146; *Missouri Pac. R.R. v. United States*, 338 F.2d at 671. Rule 13 deals with counterclaims, not offsets. The statute of limitations would bar a counterclaim, but not an offset. *See Lewis v. Reynolds*, 284 U.S. at 283, 52 S.Ct. at 146; *Dysart v. United States*, 340 F.2d at 628. Also, as discussed above, the government's right to assert an offset in this court differs from that of the ordinary defendant in the federal district courts under Fed.R.Civ.Pro. 8(c) and 13, because the government's offset right is established by statute.

Defendant's absolute right to assert an offset in a tax case also is clear, not only from the mandatory form of § 2508, but also from decisions such as *Dysart. See also* discussion, *supra; Lewis v. Reynolds* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932) (holding that the government's right to an offset for a tax involving the same year and the same taxpayer is unconditional).

Plaintiff's authority for the contention that the government's amendment to its answer to plead the setoff claim may be barred for equitable reasons consists of two cases, one decided by the Court of Claims, and one by the Claims Court, only one of which appears to have been cited in any other published case. The Court of Claims case, *Mahoney v. United States*, 223 Ct.Cl. 713, 716, 1980 WL 4712 (1980), struck four government offsets because "when defendant filed its amended answer it did not have 'concrete and positive evidence' as to the . . . four offset issues." In reaching this decision, *Mahoney* relied solely on the Court of Claims' decision in *Missouri Pac. R.R. v. United States*, 168 Ct. Cl. 86, 338 F.2d 668 (1964) that the government must "demonstrate that it has some concrete and positive evidence . . . that there is some substance to its [offset] claim and [it] is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims be-

cause of the cost ... [of] proving each and every item involved in a tax return." *Mahoney*, 223 Ct.Cl. at 715, citing *Missouri Pac.*, 338 F.2d at 671–72.

However, the *Mahoney* case expressly "deal[t] with discovery abuse rather than the substantive law of offsets in tax litigation." *Id.*

Also, as the *Mahoney* dissent noted, *Missouri Pac.* did not set conditions on the government's right to plead an offset, or to conduct discovery with respect to one, but dealt only with whether it appeared there was sufficient evidence at pretrial to go on to trial and with who bore the burden of proof of an offset at trial. (Nor has *Missouri Pac.* been cited by other courts as authority for the proposition that the government's right to amend its pleadings to assert an offset is dependent on the existence of "concrete and positive evidence.") Thus, the issue in *Missouri Pac.* was whether the government's claim, evaluated *post* discovery, merited trial, and not whether the offset claim could be asserted in the first place.

If *Mahoney* is *not* limited to its narrow holding, based on egregious facts,[11] and is expanded from a decision dealing with the proper scope of discovery to a decision limiting the government's right even to plead or assert an offset, it would overrule *Dysart* and *Lewis v. Reynolds. Mahoney* did not purport explicitly to do this.

■■■ Nor may this court itself overrule these cases, or decide that they have been overruled, when they have not been expressly overruled by the Court of Claims or the Court of Appeals for the Federal Circuit. This court must follow Court of Claims precedent until overruled by the Federal Circuit. *See Connolly v. United States,* 1 Cl.Ct. 312, 321, n. 11, 323, 554 F.Supp. 1250 (1982). It is not for a lower court to determine when binding precedent

is constructively overruled by another case. *See Gersman v. Group Health Ass'n, Inc.,* 975 F.2d 886, 905 (D.C.Cir.1992). Also, "where there are conflicting precedents, the earlier precedent controls." *Atlantic Thermoplastics Co. v. Faytex Corp.,* 974 F.2d 1279, 1281 (Fed.Cir.1992). Cf. *Sioux Nation of Indians v. United States,* 220 Ct.Cl. 442, 601 F.2d 1157, 1172 (1979) (" 'inferior' courts are not allowed to overrule Supreme Court decisions the Supreme Court itself has not expressly overruled. x x x We are not required to praise them, nor extend them beyond their precise holdings.").

That *Mahoney* did *not* intend to overrule *Dysart* and *Lewis* may be inferred not only from the fact that it did not do so explicitly, but also from the fact that no case decided after *Mahoney* has held that *Mahoney* overruled *Dysart* and *Lewis* or that these opinions are no longer good law.

The only case that has relied on *Mahoney* as authority for disallowing an amendment to the government's answer to assert a government claim, *McLennan,* 23 Cl.Ct. 99, is not precedent binding on this court, and could not, and did not purport to, overrule *Dysart* or *Lewis.* One other case, *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1326 (Fed.Cir.1990), has cited *Mahoney,* but merely for the not novel proposition that *discovery* may be limited to "relevant" matters. *McLennan* also, like *Missouri Pac.,* actually dealt with a different question than the right to amend an answer to plead an offset—specifically, the quantum of evidence the government must proffer to go to trial on the offset claim (to withstand summary judgment) *not,* as here, the government's right, *ab initio,* to amend its answer to plead such a claim.

Neither *Mahoney* nor *McLennan* addresses the effect of 28 U.S.C. §§ 1503 and 2508 on the government's right to assert an

---

11. In *Mahoney* the government was found to be abusing its powers for the *in terrorem* effect. The facts here are distinguishable, since the government has ample grounds (albeit perhaps not "concrete" evidence) for raising the question of the method and life of the depreciation, based on the information previously provided

by plaintiff as well as on the nature of the claim. Further, the burden of providing the additional discovery in this case is not such as to "harass" plaintiff from asserting and litigating its claim, and, as plaintiff concedes, was within the original scope of discovery.

offset, or even mentions these statutes. *See Scott v. United States,* 173 Ct.Cl. 650, 354 F.2d 292, 297 (1965) ("We think it apparent that Congress intended the [1863 Act on which §§ 1503 and 2508 were based], formulated in general phrases, to enable the Government to make as full use of its counterclaim power as accepted or respected principles allow at any particular time.") (citing *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946)). Thus, they cannot be read to implicitly invalidate such statutes.

Again, because these statutes condition the government's waiver of its sovereign immunity to suit in all cases brought before this court and this court is one of limited statutory jurisdiction, these must be read strictly in the government's favor. *See Dep't of Energy v. Ohio,* — U.S. at ——–——, 112 S.Ct. at 1630–31 (citation omitted); *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

*Mahoney* did not address whether the mandate of 28 U.S.C. §§ 1503 and 2508 to allow an amendment for a government offset is a jurisdictional requirement. *Cf. Martin J. Simko Constr. Inc. v. United States,* 852 F.2d 540, 542 (Fed.Cir.1988) (holding that Contract Disputes Act of 1978 did not divest court of "jurisdiction" to decide government counterclaims (for fraud or under the False Claims Act) not presented to a contracting officer, but not questioning the government's right to amend an answer to assert a setoff or counterclaim on any other grounds). Therefore, *Mahoney's* exercise of jurisdiction (even after striking the government's offsets) is not binding on the question of whether this court's jurisdiction is conditioned on allowance of the amendment. *See Huston v. United States,* 956 F.2d 259, 261 (Fed.Cir.1992) ("this court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio.*") (quoting *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) (citation omitted)).

The statute of limitations on the government's right to assert a deficiency, *see* I.R.Code § 6501 ("Limitations on Assessment and Collection"), has been viewed as a valid statutory limitation on this court's jurisdictional mandate to hear government *counterclaims, see, e.g., Lewis v. Reynolds,* 284 U.S. at 283, 52 S.Ct. at 146, and discussion, *supra.* However, no court has found this statute of limitations to bar assertion of a government *offset* claim based on the same taxable year at issue in the refund claim.

The court is aware of no other statute authorizing this court to limit or disregard the conditions on the waiver of immunity imposed by Congress in §§ 1503 and 2508. See *Marley v. United States,* 180 Ct.Cl. 898, 381 F.2d 738, 742 (1967) ("We are not at liberty, by interpretation, to limit or restrict the plain and broad terms of [§ 1503].").

*Conclusion*

■ Accordingly, the court grants defendant's motion for leave to amend its answer. The only issue remaining before the court is whether the government may have limited discovery on its offset claim. The court, in the exercise of its discretion to regulate practice and discovery before it, and based on the circumstances and considerations discussed, *supra,* notes 10 and 11, allows the limited discovery requested by the government. If, after such discovery, plaintiff believes a motion for summary judgment is appropriate on the offset claims, it may move the court for permission to file such a motion.

Since settlement negotiations appear to have broken down, the suspension of this case is lifted. Defendant's written discovery requests regarding the limited issue raised by the offset claim shall be served upon plaintiff within two weeks of service of this order. Plaintiff's responses shall be due within three weeks thereafter. Within four weeks of the date of this order, the parties shall file a joint status report,

which shall include a proposed schedule for further, accelerated pretrial proceedings.