Taxes; income tax; defendant’s offset to plaintiffs claim; when appropriate and when improper. — On April 11, 1980 the court entered the following order:
Before Nichols, Judge, Presiding, Kashiwa and Smith, Judges.
In this income tax case we now have before us defendant’s motion for sanctions, by summary judgment or by order forbidding introduction of evidence, all for alleged noncooperation in discovery, plaintiffs motion for judgment on the pleadings, or in the alternative, for summary judgment, all for defendant’s alleged bad faith in filing false or sham pleadings, and defendant’s cross-motion for summary judgment, based on one of the defenses asserted in its amended answer, and for discovery under Rule 101(g) to aid summary judgment. We are confronted by a welter of charges and counter-charges in which the case is bogged down, and cannot hope to resolve the litigation at this time. The usual cooperation of tax lawyers to put the facts before the court is missing. The most we can accomplish is to get it moving again so that judgment can be entered one way or the other within lives in being.
Plaintiff is a wealthy New Yorker. In the audit of his income tax return for 1971 the Commissioner made only one significant disallowance. He determined the fair market value of property contributed by plaintiff to be $1,218, thereby eliminating part of a claimed charitable deduction to the extent of $67,484, resulting in a tax deficiency of $39,508 plus interest, which plaintiff paid.
*714 Defendant’s answer, as originally filed on December 12, 1977, consisted of denials in standard form. December 5, 1978, almost a year later, defendant filed an amended answer which set up as additional defenses that the Commissioner erroneously failed to disallow the following additional claimed deductions in the 1971 return:
(a) Ordinary income loss of $124,322 claimed for plaintiffs share as a limited partner in Rosewood Manor Apartments.
Ob) A net farm loss of $105,730.
(c) Ordinary income loss of $92,532 claimed for plaintiffs share as a limited partner in "1971 Exploration Program Ltd.”
(d) Ordinary income loss of $72,168 as limited partner in Belco Oil and Gas Fund, Ltd.
(e) Ordinary income loss of $205,357 as limited partner in Austin Funds, Ltd.
Except that the Commissioner erred, defendant does not allege any facts in support of these legal conclusions. Defendant admits that limitations have run on all these five new disallowances. It cannot recover on them as counterclaims, but only use them to the extent it establishes them, as offsets to the plaintiffs claim. Thus, if plaintiff loses on his primary claim, all five are moot. If plaintiff prevails on that, but loses on any one of the offsets, all the others are moot.
On February 13, 1979, a panel of this court denied a request for review under Rule 53(c)(2)(ii) of the trial judge’s order which had allowed the amended answer to be filed (219 Ct. Cl. 624). We said defendant made its motion "after substantial discovery,” the inference being that defendant after discovery knew enough about the five deductions to establish it had some color of entitlement to disallow, and was not embarked on a mere fishing expedition. The true extent of the so-called "substantial discovery” was not known or not adverted to. The above order cites Missouri Pacific R.R. v. United States, 168 Ct. Cl. 86, 338 F.2d 668 (1964). In that case we approved the legitimacy of the assertion of offsets by defendant, simply as offsets, not as counterclaims, after limitations have run, with the proviso, however, as stated, 168 Ct. Cl. at 91, 338 F.2d at 671-72:
*715 However, before the taxpayer has the burden of proving the correctness of the challenged item under situations (1) and (2), we think that the government has the burden of going forward and showing that there is a reasonable basis in fact or in law for its setoff defense. By this we mean that the government has to demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its claim and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims because of the cost that would result in proving each and every item involved in a tax return. In a case where the taxpayer raises specific issues as to a tax, and there is no good reason for the government to challenge the remainder of the items going to make up the tax, the government should not be able to cast the burden on the taxpayer of proving each and every item. The right of allowing an offset under these situations is an equitable right given to the government based on the equitable principles and, as such, should not be abused. If properly used, it should provide the government with a "shield” to prevent the unjust enrichment of a taxpayer, but if used as a "sword” it would under certain circumstances have the contrary effect. * * *
The reference to equitable principles must be read in light of Dysart v. United States, 169 Ct. Cl. 276, 340 F.2d 624 (1965) which holds that when the alleged offset involves the same tax and the same taxable year, defendant is entitled to assert it as a matter of law and such equitable doctrines as laches are not for application. There defendant had the facts and belatedly changed its mind as to the law. Dysart does not involve, as here, a situation where defendant has no facts and amends its answer to assert offsets in order to qualify itself to search for facts by discovery. The same judge, Laramore, spoke for the court in both cases, saying nothing in Dysart to modify the authority of Missouri Pacific.
The parties here rightly treat Missouri Pacific as stating the law applicable to fishing expeditions conducted in a search for offset defenses. The present case deals with discovery abuse rather than the substantive law of offsets in tax litigation. It appears to be in large part the one foreseen by Judge Laramore in Missouri Pacific.
*716 Defendant now has, and apparently had, reposing in the files of the FHA, when the suit was filed, a considerable volume of documentary evidence concerning only the Rosewood Manor limited partnership. Counsel had been remiss, he says, in not realizing that FHA had in Washington possessed a file on this matter, including many documents he had been belaboring plaintiff to produce in discovery. We think it constitutes the "concrete and positive evidence” that Missouri Pacific requires, without taking the view it is all the evidence we should have to adjudicate the matter. Counsel produced it before the motion to dismiss the alleged setoffs as sham came before us, and in view of a lack of previous decisions as to just when the "concrete and positive evidence” must be in defendant’s hands, we believe if we disapprove of defendant’s handling of the Rosewood Manor deduction, we should not give that disapproval retroactive effect. Defendant will take warning for the future.
It is quite apparent now that when defendant filed its amended answer it did not have "concrete and positive evidence” as to the other four offset issues. Defendant in its brief (on its cross-motion) of July 18, 1979, summarizes what it had:
Specifically, our trial attorney in the instant case has previously worked on tax shelter investments nearly identical to that of the taxpayer’s Taurus cattle program, involving "cattle purchases” from Stratford of Texas, Inc. (Dennis Affidavit, par. 4(b).) Accordingly, he is aware of the typical factual patterns of those investments and that the Government, as a matter of law, disputes the loss deductions. Furthermore, with respect to the remaining three deductions involving oil and gas ventures, our trial attorney is familiar with similar oil and gas tax shelters and that, under their normal business operations, they yield claimed deductions which the Government contends are improper. (Dennis Affidavit, par. 4(c).) [Id. at 47.]
The Dennis Affidavit, in Appendix B to the cross-motion, supplies some added details. As to the Taurus cattle feeding loss deduction, it notes that—
* * * I am familiar with other taxpayers’ cattle investments with Stratford of Texas, Inc., and am aware of tax *717 problems which have resulted from these investments. The Internal Revenue Service takes the position that taxpayers in these investments are not entitled to any feed or other service deductions on various grounds, * * * [stating three]. Thus, it appeared reasonable to conclude that the deductions had been erroneously claimed and allowed. [Id. at 8.]
The affidavit then recites an inability to move for summary judgment because of the taxpayer’s inability to produce any documents. Taxpayer had demonstrated he had almost no information. Taxpayer was under order of the trial judge to request documents but Taurus Corporation has not responded.
As regards the three oil investment deductions:
* * * I was familiar with similar oil and gas tax investments and, furthermore, aware that loss deductions of such investments may be improper on * * * [three alternative grounds which he states]. [Id. at 9.]
There then follows another litany of failure to obtain records of the entities in which plaintiff was a limited partner, by means of discovery demands on plaintiff. It is admitted that—
* * * No inquiry had been made into these matters on audit.* * * [Id. at 10.]
What all this adds up to is that counsel was suspicious of these kinds of deductions because his experience as a tax lawyer, led him to believe that often they were improperly claimed, but it does not appear he attached any weight to the allowance of them, in plaintiffs case, by the Commissioner.
Neither the label "tax shelter” nor the fact that a partnership may produce losses in a given year which appear to be out of proportion to the partner’s investment necessarily indicate that the resulting loss deductions are improper. The Commissioner himself has just recently acknowledged this explicitly in IRS Letter Ruling 8006079, 80(10) CCH-Standard Federal Tax Reports, ¶ 6970H (Oct. 19, 1979). Defendant’s plea that the Commissioner of Internal Revenue "erroneously” failed to disallow the additional claimed deductions merely highlights the fact *718 that if any impropriety is involved in such losses of a limited partnership it would most likely be discovered in an examination of the operating general partners, something defendant is in a much better position to accomplish than the investing taxpayer who merely holds a limited interest. Since our order of February 13,1979, entered because of our standing reluctance to interfere unnecessarily in the trial process, defendant has had ample opportunity to confirm suspicions of its counsel and has produced virtually nothing of substance on these proposed offsets. While on February 13, 1979, we were in no position to say defendant’s defenses were unfounded, now we are. That they might still prove founded on some theory if all the facts were known, is a speculation we are not required to indulge in. They were unfounded when the answer was filed.
Defendant had, undoubtedly, information returns filed by the general partners of the entities in which plaintiff suffered his-no doubt desired-losses, and could have audited them with results equitable to all partners alike. Instead, plaintiff is singled out because he filed a suit in the Court of Claims, and is required seven years after to obtain documents for us at secondhand. If these documents prove what counsel hopes they will prove, plaintiff will suffer a tax detriment apparently not suffered by other limited partners in the same ventures. Cf. International Business Machines Corp. v. United States, 170 Ct. Cl. 357, 343 F. 2d 914 (1965), cert. denied, 382 U.S. 1028 (1966).
It is well known that present day litigation has become extremely time consuming, burdensome, and costly, and that a large, perhaps the largest, portion of this is attributable to discovery rather than trial. This is not less true in a tax case such as this, where defendant seeks to explore six alternative routes to the same goal. Rather, it is more than six, for it has in mind three alternative routes that may lead to disallowance of the Taurus deduction alone, and corresponding alternatives exist for all the other proposed disallowances.
We think, in view of the foregoing, defendant must possess "concrete and positive evidence” before it initiates discovery into matters relevant only as to establishment of offsets. Massive discovery on the basis of the suspicions *719 entertained here is exactly the "mere fishing expedition or method of discouraging taxpayers from seeking refunds” which the Missouri Pacific decision disapproved. As to fishing, every fisherman lowers his hook where he thinks there are most likely to be fish, but his opinion is not "concrete and positive evidence” that fish are there. If the methods employed against plaintiff are not intended to discourage him and others from suing for refunds of taxes, this must, if tolerated, be their inevitable effect. In deciding as we do, to eliminate the four offset defenses, other than the one relating to Rosewood Manor, we do not question counsel’s good faith, but we challenge his priorities, and we call on the tax division to take notice of the fact that, under Missouri Pacific, in setting up offsets it is asserting equitable principles which must not be abused, to prevent unjust enrichment, and it must use its offsets as a shield, not as a sword.
It follows that defendant’s discovery demands represent an abuse of the discovery privilege in a "fishing expedition.” We think that plaintiff also has abused discovery. As a sanction, we direct that no further discovery be had in this case by either side, except as we direct hereinafter. We think our trial division has played entirely too passive a role in the management of this case hitherto. Even if relevant, and based on solid leads, discovery demands should be held to moderate volume, which cannot be said of those before us. Discovery by defendant cannot be regarded as a means of conducting a reaudit, as defendant seems to wish to do here. Discovery in the course of litigation is a costly and cumbersome substitute for a true audit, and is abused if employed to that end. The revenue agent can poke into everything without being required to have even a suspicion that anything is not as it should be. A taxpayer should not be subjected to this more than once. Counsel here must use the very different tools he is given for the very different purposes of adversary litigation.
The case cited in the dissent says no more than that pleaded facts are taken as true on a motion to strike. Kelly v. Kosuga, 358 U.S. 516 (1959). Here the amended answer pleads no facts, only legal conclusions. An amended answer that pleaded facts would present a case not now before us.
*720 As regards defendant’s proposed summary judgment on the Rosewood Manor loss deduction, we are reluctant to pass on it now but continue to believe that summary judgment may be the best way to dispose of it. It requires us to pass on the tax accounting of a party whose tax return is not before us, Rosewood Manor Apartments, a partnership. The parties stipulate to nothing. They cannot even agree whether the partnership was on a cash or accrual basis, or whether the construction loan was replaced by a permanent loan. Nevertheless, we are not convinced that there are genuine fact issues requiring trial. We hold that plaintiff should be and is allowed to cross-move for partial summary judgment on this issue, to inspect and copy papers relevant to Rosewood Manor which defendant states it has but has not filed, and to file any papers it chooses, usable under our rules, in support of its cross-motion. The dispositive facts probably depend on documents of unchallengeable authenticity, not on oral testimony which may or may not be believed. The facts are nevertheless complex and intertwined. We believe it appropriate to, and we do call on the trial division under Rule 54(b) to consider the pending motion and the cross-motion if one is filed, and recommend a disposition. If the trial division cannot recommend a disposition that will dispose of the case, it will schedule a trial on triable issues without awaiting our disposition of its Rule 54(b) recommendation.
There seems to be no dispute but that the original issue, the charitable gift disallowance, requires trial. There is, as stated, to be no discovery concerning that.
Accordingly, upon consideration of the various motions before us, the record, the briefs, and oral argument, the said motions are granted to the extent indicated in the foregoing paragraphs, and otherwise denied. Judgment will be entered for plaintiff on the four offset defenses other than Rosewood Manor. The Rosewood Manor Apartments motion for summary judgment is referred to the trial division for a recommendation under Rule 54(b), as is any cross-motion hereafter filed dealing with the same topic. No further discovery is to be had by either party except as stated.
IT IS SO ORDERED.
*721 Defendant’s motion for rehearing and suggestion for rehearing en banc were denied May 30, 1980. See 224 Ct. Cl.