DAVID L. FANNON AND ELIZABETH B. FANNON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fannon v. Commissioner
Docket No. 43131-86.
United States Tax Court
T.C. Memo 1989-136; 1989 Tax Ct. Memo LEXIS 136; 56 T.C.M. (CCH) 1587; T.C.M. (RIA) 89136; March 30, 1989. James W. Morris III and Richard C. L. Starke, for the petitioners. William L. Ringuette, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the taxable years ending December 31, 1979, 1980 *137 and 1981 in the amounts of $ 16,303.56, $ 28,136.53 and $ 19,064.60, respectively. The single issue for decision is the fair market value on December 6, 1978, of a "scenic easement" over certain real estate in Rappahannock County, Virginia donated by petitioners to the Virginia Outdoors Foundation. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife whose legal residence at the time of filing the petition herein was Amissville, Virginia. For taxable years 1979, 1980 and 1981, petitioners timely filed joint Federal income tax returns with the Director, Internal Revenue Service Center, Memphis, Tennessee. Petitioners own approximately 147 acres of scenic, rural property located in the Jackson District of Rappahannock County, Virginia. The subject property is located approximately six and one-half miles from Washington, Virginia. Washington, the county seat, is approximately 65 miles southwest of Washington, D.C. Most of petitioners' property consists of gently rolling pasture or woodland. Other than petitioners' residence, *138 barn and miscellaneous frame buildings, the property is largely unimproved. There are no sidewalks or curbs, sewage disposal is by an individual on-site septic system and water is provided by means of drilled wells. Access to petitioners' property is provided by U.S. Route 211, a four-lane highway which adjoins the property. By a valid deed of easement dated December 6, 1978, petitioners conveyed to the Virginia Outdoors Foundation, an "open-space easement in gross over, and the right in perpetuity to restrict the use of" approximately 142 acres of petitioners' property (hereinafter referred to as the "scenic easement" or "easement"). Approximately 5 acres of petitioners' property were excluded from the scenic easement. The Virginia Outdoors Foundation is a qualified charitable organization described in section 170(c)(2). [1] The restrictions imposed by the scenic easement on the use of the property include: (1) no dumping of refuse; (2) restrictions on signs and outdoor advertising; (3) no subdivision into parcels less than 45 acres each; (4) only selective cutting of timber; (5) restrictions on grading, blasting or earth removal; (6) restrictions on the number and *139 type of structures that may be constructed on each parcel in the event of subdivision and (7) restrictions on industrial or commercial activities. Conveyance of the scenic easement to the Virginia Outdoors Foundation qualified under section 170(c) as a charitable contribution. On their Federal income tax return for taxable year 1978 (which year is not in issue), petitioners reported the value of the easement as $ 158,682.12. The reported value was based upon an appraisal letter dated May 1, 1978, from J. Newbill Miller (Miller), a local real estate expert. The deduction taken by petitioners on their 1978 return was limited by section 170(b)(1)(C). Of the remaining amount, $31,387.35 was carried over to petitioners' 1979 Federal income tax return, $ 56,273.06 was carried over to petitioners' 1980 Federal Income tax return and $ 38,698 was carried over to petitioners' 1981 Federal income tax return. In his notice of deficiency, respondent valued the scenic easement *140 at zero. Accordingly, respondent disallowed petitioners' charitable contribution deductions based on the easement for taxable years 1979, 1980 and 1981. The only matter in dispute is the fair market value on December 6, 1978, of the scenic easement donated to the Virginia Outdoors Foundation. To establish the easement's fair market value, petitioners and respondent each presented the testimony of an expert witness. Petitioners' Expert Testimony
Petitioners used Miller as their expert. Miller has lived most of his life in Rappahannock County, has been a real estate agent for over 20 years, a member of three boards of realtors and is actively engaged in appraising real estate in Rappahannock and surrounding counties. He is recognized as a real estate expert by the circuit courts of Warren, Madison, Rappahannock and Fauquier Counties of Virginia. Miller has had extensive experience in zoning and land use in Rappahannock County. He served as Chairman of the Rappahannock County Board of Supervisors for 10 years and as a member of the Rappahannock County Planning Commission for 20 years. In addition, Miller served for 8 years as mayor of Washington, Virginia and served one *141 term as the District Director of the Soil and Water Conservation Service. In his letter dated May 1, 1978, Miller concluded that the highest and best pre-easement use of the property was residential development. The scenic easement prevented that use of the property and, thus, the highest and best post-easement use of the property was agricultural. In a subsequent report dated February 1988, Miller stated the property was "an excellent property for future development" into 5-acre lots, in part because of its road frontage on U.S. Route 211 and its "beautiful views." Residential development was progressing quite rapidly from Washington, D.C. toward Rappahannock County. At the time of trial, a 379-home subdivision was being built on Route 211, 8 miles from petitioners' property. Although at the time of contribution the property was zoned for agricultural use, Miller believed that it would have been no problem to get the property rezoned. In so stating, he drew upon his experience as Chairman of the Board of Supervisors and member of the Rappahannock Planning Commission at the time the ordinances regarding land use in Rappahannock County were enacted. Miller valued the easement *142 by using the "before and after" method, which calculates the reduction in value of the property due to the easement. Miller arrived at two different pre-easement values of the property. First, in his letter of May 1, 1978, he derived the fair market value of the easement by subtracting the post-easement agricultural value of the land ($ 52,567.88 including improvements on the land) from the projected "development value" of the land without the easement ($ 211,250 including improvements). He thus opined that the fair market value of the easement was $ 158,682.12. Miller arrived at the "development value" of the land by calculating the per acre price of other comparable agricultural land in the immediate vicinity and multiplying that value times the number of acres subject to the easement. He arrived at the agricultural value of the land by using an Internal Revenue Service special farm valuation formula for estate tax purposes. Second, Miller arrived at a higher value of the easement at trial. There, he used the average selling price of other 5-acre parcels in the immediate vicinity to arrive at a value of the Fannon property if it were subdivided into 5-acre lots. This value *143 was $ 338,110. Miller then arrived at the easement value either by subtracting the $ 52,267.88 post-easement value described above, or by subtracting a $ 35,000 value (without improvements) based on a state valuation formula, with this value provided by a county employee. Petitioner also presented testimony regarding the value of scenic easements that the National Park Service acquired in the area of the Appalachian Trail. According to the testimony, the price of the easements were 50 to 80 percent of the value of the underlying properties. Respondent's Expert Testimony
Respondent's expert witness, John A. Davidson (Davidson), is a real estate appraiser with the Internal Revenue Service, Philadelphia District, with a post of duty in Richmond, Virginia. Prior to his employment with the Internal Revenue Service, Davidson was employed by the United States Army Corps of Engineers as Chief Appraiser. He has qualified as an expert in Federal Courts in Newark, New Jersey, the Northern District of Mississippi and the United States Tax Court. Davidson did not consult local experts in the real estate market in this case. He used data in part collected for previous cases before *144 this Court concerning the value of scenic easements. See Symington v. Commissioner,87 T.C. 892 (1986), which involved the value of a scenic easement in Fauquier County, Virginia, and in which Davidson testified as an expert. See also Fannon v. Commissioner,T.C. Memo. 1986-572, modified and remanded 842 F.2d 1290 (4th Cir. 1988), which involved the value of a scenic easement in Rappahannock County donated by the brother of one petitioner in the instant case and in which Davidson also testified as an expert. Davidson also used the "before and after" method to value the easement. In his appraisal report dated July 5, 1985, Davidson valued petitioners' property both before and after the easement at $ 215,000. He therefore assigned a zero value to the scenic easement donated by petitioners to the Virginia Outdoors Foundation. His report contained market data and assumptions he used in deriving his before and after value of petitioners' property. He stated in his report, "This appraiser does not know of any encumbered properties which have resold in Rappahannock County. Therefore, it is necessary to go into competing areas." Accordingly, *145 Davidson listed ten "resales" of encumbered property located in the adjoining Fauquier and Clarke counties. The data showed annual appreciation of the subject properties ranging from 4.36 percent to 122.47 percent despite scenic easement restrictions similar to those imposed on petitioners' property. Davidson compared the appreciation of these properties with the appreciation of unencumbered properties and concluded that scenic easements do not reduce the value of property. According to Davidson, "the present use as zoned and developed is recognized as the highest and best use of the subject property" both before and after imposition of the easement. This assumption formed the foundation of his appraisal. He did not consider residential development of the property feasible due to existing zoning restrictions and what he perceived as local sentiment against such development. It was his opinion that residential development of petitioners' property would face a protracted "sell-out" of 4 to 7 years which would reduce the residential value, if any, of petitioners' property. Neither Davidson's report nor his testimony provides data on the value of the easement if, in fact, the easement *146 had a value. However, he admitted upon cross examination that given a choice between property encumbered by a scenic easement and property without an easement, a potential buyer would prefer to buy the property without the scenic easement. OPINION There is no dispute in this case that an actual donation was made to a qualified charitable donee under section 170(c). To determine the allowable deduction, however, we must determine the fair market value of the donated property, the scenic easement. Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs. A recognized method of establishing the fair market value of a scenic easement where no comparable sales are available is to measure the difference between the fair market value of the subject property immediately before the easement was granted and the fair market value of the property after the *147 easement was granted. Any decline in fair market value as a result of the easement represents the fair market value of the easement itself. This "before and after approach" was approved by respondent in Rev. Rul. 73-339, 1973-2 C.B. 68, clarified by Rev. Rul. 76-376, 1976-2 C.B. 53. See also Akers v. Commissioner,T.C. Memo. 1984-490, affd. 799 F.2d 243 (6th Cir. 1986); Thayer v. Commissioner,T.C. Memo. 1977-370. Both experts agree the before and after approach should be used to value the scenic easement. They agree the highest and best use of the property after the easement was granted was for agricultural use. However, they disagree over its best use before the easement was granted. Miller concluded residential development was the most profitable use of the property before the easement was imposed. Davidson concluded agricultural use was its highest and best use both before and after the easement was granted. Opinion evidence is admissible on the question of value; however, it must be weighed in light of *148 the demonstrated qualifications of the expert and all other evidence of value. Anderson v. Commissioner,250 F.2d 242, 249 (5th Cir. 1957), affg. a Memorandum Opinion of this Court. We are not bound by the opinion of any expert witness when that opinion is contrary to our own judgment. Barry v. United States,501 F.2d 578 (6th Cir. 1974); Kreis' Estate v. Commissioner,227 F.2d 753, 755 (6th Cir. 1955), affg. a Memorandum Opinion of this Court; Tripp v. Commissioner,337 F.2d 432 (7th Cir. 1964), affg. a Memorandum Opinion of this Court. We may embrace or reject expert testimony, whichever, in our best judgment, is appropriate. Helvering v. National Grocery Co.,304 U.S. 282 (1938); Silverman v. Commissioner,538 F.2d 927, 933 (2d Cir. 1976), affg. a Memorandum Opinion of this Court. It is not unusual in valuation cases that two expert appraisers reach significantly different conclusions. However, the reports and testimony of the experts in this case are so dissimilar that it strains the credibility of their testimony. Perhaps both experts were too "result oriented" *149 in this case. This places the Court in the unenviable position of applying its judgment in an area where it has no particular expertise, a process which has been described as "inherently imprecise" at best. Messing v. Commissioner,48 T.C. 502 (1967). See also Symington v. Commissioner,87 T.C. 892 (1986), and Buffalo Tool & Die Mfg. Co. v. Commissioner,74 T.C. 441, 452 (1980). Davidson believed that agricultural use was the highest and best use of the property both before and after the easement and that the easement did not interfere with that use. Thus, he valued both the pre-easement and the post-easement property at $ 215,000, including improvements. Accordingly, he valued the easement at zero. On its face, this appears to us to be short sighted. Even if the highest and best use of the land before the easement was for agricultural use, or as a country gentleman's estate, the imposition of the easement was bound to reduce the value somewhat, unless we acknowledge that such use of the land will never change. [2] We believe Davidson relied too much on the fact that residential development had not progressed on a large scale *150 in Rappahannock County when this easement was granted. This ignores the fact, however, that residential development was progressing quite rapidly from Washington, D.C. toward Rappahannock County. Davidson agreed at the trial that a buyer would prefer to buy property without the easement than with the easement. Such a preference clearly would affect the respective values of property with and without an easement. But neither Davidson nor respondent gave us any opinion on what these respective values would be. We think Davidson lacked a personal understanding of the characteristics of petitioners' property which made it suitable for residential development. This may be due in part to his decision not to seek the advice or opinion of local experts. We believe Miller possesses a superior knowledge of petitioners' property and local governmental and community attitudes toward *151 real estate development. However, his appraisal report lacked a detailed, analytical approach to valuation of petitioners' property, and we have had difficulty in determining how he arrived at the values reported in his appraisals. Miller's testimony at trial amplified his written report, and we have given weight to this testimony. But in our opinion Miller did not justify his valuation. Because the property has never been used for residential purposes, petitioners have the burden of proof of showing that residential development was the highest and best use of their land and that "there existed a reasonable probability the land would be so used in the reasonably near future." Stanley Works and Subsidiaries v. Commissioner,87 T.C. 389 (1986). In applying the above standard, we find petitioners carried their burden in establishing residential development to be the property's highest and best use. The following factors influenced our decision: (1) Land used for residential purposes in the general vicinity of petitioners' property has a higher value than agricultural land. *152 (2) Land formations found on petitioners' property, such as rolling hills, tree lines and the presence of streams and rivers, could be incorporated into a desirable residential community. (3) Surface and subsurface soils appear adequate to support construction of multiple residences. (4) Soil studies establish the ability of much of petitioners' property to support essential septic tank sewage systems. (5) The property is readily accessible by a principal highway. (6) Although zoned for agricultural use at the time of contribution, we are convinced by Miller's testimony that rezoning of petitioners' property would follow such a request. In light of his long participation in local zoning policy, Miller's testimony was credible and convincing. (7) Population growth patterns around petitioners' property suggest residential development is reasonably probable in the reasonably near future. There was a noticeable movement of residential development toward Rappahannock County. We need not determine that extensive residential development of Rappahannock County is imminent or even a "few years down the road." Our inquiry is centered on petitioners' property and the probability *153 of its development, were it not encumbered by the scenic easement, in the reasonably near future. Having concluded that residential development was the highest and best use of petitioners' property before the easement was granted, we must determine the decrease in value of the property resulting from the scenic easement, which effectively prevented such use. Normally respondent's determination of value would be presumed to be correct and petitioners would have the burden of proving that respondent's determination of the value of the easement was wrong. However, under the circumstances here involved we cannot conclude that respondent has established a presumption of correctness that petitioner must disprove. Presumably in reliance on his determination that residential development was not the highest and best use of the property before the easement was granted, respondent has made no determination of the drop in the value of the property due to the restriction on development. Our conclusion that the property did drop in value does not place the burden of proof on respondent to prove that value but it does relieve petitioner from the presumptive correctness of respondent's determination *154 of value. Consequently, we must determine that value ourselves, based on all the evidence relative thereto, without the benefit of any presumptions. Much of the evidence of the pre-easement and post-easement values of the property was presented by petitioners. However, we are not satisfied with petitioners' valuation of the property for that purpose. Fannon v. Commissioner,T.C. Memo. 1986-572, modified and remanded 842 F.2d 1290 (4th Cir. 1988). Petitioner presented two methods of valuing the property before the easement was imposed. One, presented at trial, was to calculate the value of the property if it was subdivided, with all parcels sold at the average selling price of other 5-acre parcels in the immediate vicinity. There is no evidence, however, that the market could absorb so many lots unless the selling prices were substantially less than at the time the easement was granted. Petitioners' original method is more correct. This method, which was used in the May 1, 1978 appraisal letter, compared the property with other large properties in the immediate area. The values of those properties reflected the possibility that they would be *155 subdivided in the future, and, thus, their values were appropriately used to determine the pre-easement value of $ 211,250. This value is very close to Davidson's pre-easement value of $ 215,000, which Davidson refers to as the agricultural value but which actually reflects the possibility of subdivision since it was determined by reference to values of properties unburdened with scenic easements. Petitioner presented two methods of valuing the property after the easement was imposed. The first method, reflected in his appraisal letter of May 1, 1978, used the Internal Revenue Service special farm valuation formula for estate tax purposes which was based on net rental income. This method is not appropriate here. Furthermore, we find no support for the figures used in applying the formula. The second method allegedly was based upon a state valuation formula, which also is unsupported. Petitioner also presented evidence that scenic easements in the area of the Appalachian Trail had values of 50 to 80 percent of the underlying property. However, it is clear that such easements are important to the integrity of the Appalachian Trail, and, thus, their high prices are not surprising. *156 An analogy cannot be drawn between such easements and the easements in the instant case. We are thus left with no evidence regarding the proper value of the easement. In this respect, the instant case is dissimilar to the case involving petitioner's brother, Fannon v. Commissioner, supra. In Fannon, both this Court and the Fourth Circuit relied on a reduction in the property's assessed value following the granting of the easement. In the instant case, however, there was no reduction in assessed value, and neither party argues that we should consider assessed value when valuing the easement. We note that the property in the instant case is very similar to the property in the earlier Fannon case, both in location and terrain. The property in Fannon was suitable for 10-acre lots rather than 5-acre lots, but we believe this is insignificant for purposes of valuing a scenic easement. In Fannon, the Fourth Circuit concluded that the scenic easement had a value of $ 121,781, which is approximately 37 percent of the $ 330,000 pre-easement value of the land. This provides us with better guidance than anything provided by the parties in exercising our *157 "Solomon-like" judgment, Buffalo Tool & Die Mfg. Co. v. Commissioner,74 T.C. 441, 452 (1980), and therefore we conclude that the easement in the instant case also had a value of 37 percent of the pre-easement value of the land. The pre-easement values of the land (including improvements) arrived at by both experts averages to approximately $ 213,000. Petitioners' expert valued the improvements to the land at $ 35,000, leaving a land value of $ 178,000. Thirty-seven percent of that figure is $ 65,860, and we hold that this is the value of the easement. [3]
*158 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See Symington v. Commissioner,87 T.C. 892 (1986) and Fannon v. Commissioner,T.C. Memo. 1986-572, modified and remanded 842 F.2d 1290↩ (4th Cir. 1988), in which this Court has specifically reached the same conclusion with respect to very similar properties.
3. As in Symington v. Commissioner,87 T.C. 892 (1986), and Fannon v. Commissioner,T.C. Memo. 1986-572, modified and remanded 842 F.2d 1290 (4th Cir. 1988), we voice our concern over the time and resources spent by the Court in this valuation dispute. The instant case is especially egregious because at the time of trial our decision in Fannon had been handed down, and the Court of Appeals for the Fourth Circuit had spoken before briefs were filed. Both Courts essentially rejected the valuation of both experts. Nevertheless, the parties in the instant case presented the same experts and the same expert reports and testimony as had been presented in Fannon.↩ This is unconscionable and shows a lack of respect for this Court. The parties should make a competent presentation.