Elinor P. McLENNAN, Individually and as Executrix of the Estate Donald R. McLennan, Jr., Deceased, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 129–87T.

United States Claims Court.

May 6, 1991.

Michael J. Lynch, Pittsburgh, Pa., attorney of record for plaintiff, Kirkpatrick & Lockhart, of counsel.

Terry T. Coles, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, for defendant, Mildred L. Seidman, of counsel.

## OPINION

FUTEY, Judge.

This tax case is before the court on cross-motions for partial summary judgment. Plaintiff seeks a refund of $325,-438.69 for federal income taxes paid in the 1980 and 1981 taxable years for the contribution of a scenic easement to the Western Pennsylvania Conservancy (Conservancy). Defendant maintains that plaintiff's transfer of the scenic easement was not a chari-

1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in 1980.

table contribution under § 170 of the Internal Revenue Code of the 1954 (Code),[1] 26 U.S.C. § 170. For the reasons stated below, defendant's motion for partial summary judgment is denied and plaintiff's motion is granted in part and denied in part.

### Factual Background

The facts underlying the present controversy are not in dispute. Plaintiff, Elinor P. McLennan, filed a joint U.S. Individual Income Tax Return (Form 1040) with her now deceased husband, Donald R. McLennan, Jr., for the taxable years 1980 and 1981.[2] During the period in question, the McLennans resided in Westmoreland County, Pennsylvania, and owned approximately 407 acres of property within the county.

On November 10, 1980, the McLennans executed an "Easement in Gross and Restrictive Covenants," granting the Conservancy a scenic easement over approximately 169.5 acres of their Westmoreland County property. At the time of transfer, the Conservancy was a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania. In addition, the Internal Revenue Service (IRS) recognized the Conservancy as a tax exempt organization within the meaning of 26 U.S.C. § 501(c)(3) and a corporation as defined in 26 U.S.C. § 170(c)(2).

In their 1980 joint tax return, the McLennans claimed a charitable deduction of $206,900.00 for the scenic easement contribution. Unable to utilize the full amount of their charitable contribution deduction in 1980, the McLennans carried over and claimed a $223,700.00 deduction on their 1981 joint tax return. In addition, the McLennans claimed "farm loss" deductions of $201,653.00 and $206,741.00, on their 1980 and 1981 tax returns, respectively. The deductions represented losses in the McLennans' Stornoway Farms cattle breeding venture.

2. Plaintiff brings this tax refund suit individually and as executrix of the estate of her late husband.

In 1982, IRS agent Robert Berlin, performed an audit of the McLennans' 1980 and 1981 joint tax returns. By letter of November 7, 1983, the Commissioner of Internal Revenue disallowed all but $70,-000.00 of the charitable deduction claimed by the McLennans.[3] The IRS made no adjustment or disallowance of the farm loss deductions claimed by the McLennans in their joint tax returns. On November 16, 1983, the Commissioner assessed a tax deficiency of $95,830.00, plus $43,626.49 in interest for the 1980 tax year, and a deficiency of $143,039.00, plus $42,943.10 in interest for the 1981 tax year. The McLennans paid this amount in full on January 3, 1984. Thereafter, the McLennans filed two amended U.S. Individual Tax Returns for the taxable years in question.

Plaintiff instituted an action in this court on March 11, 1987. Defendant amended its answer to plaintiff's complaint on October 21, 1988, alleging that plaintiff was not entitled to the 1980 and 1981 "farm loss" deductions under 26 U.S.C. § 183. Defendant further contends that any tax refund due plaintiff must be offset by the increased tax liability resulting from the disallowance of the farm deductions. Defendant also challenges plaintiff's entitlement to a charitable deduction for the transfer of the scenic easement to the Conservancy. More specifically, defendant asserts that (1) the Conservancy is not a charitable organization within the meaning of 26 U.S.C. § 170(c)(2); (2) plaintiff made no "gift of property" for purposes of 26 U.S.C. § 170 since the McLennans reserved numerous rights in the scenic easement property; and (3) plaintiff lacked the requisite donative intent and exclusive conservation purpose in conveying the scenic easement to the Conservancy. On December 12, 1990, plaintiff filed a motion for partial summary judgment, contending that the charitable and farm loss deductions were properly taken. On February 22, 1991, defendant filed a cross-motion for partial summary judgment maintaining that, as a matter of law, plaintiff cannot establish entitlement to a charitable contribution deduction under 26 U.S.C. § 170.

*Jurisdiction*

■ Plaintiff seeks recovery for an alleged overpayment in federal income taxes. As such, the court has jurisdiction over the instant suit under the Tucker Act, 28 U.S.C. § 1491 (1982); 26 U.S.C. § 7422 (1982). *See Consolidated Edison Co. v. United States,* 133 Ct.Cl. 376, 135 F.Supp. 881 (1955), *cert. denied,* 351 U.S. 909, 76 S.Ct. 694, 100 L.Ed. 1444 (1956), *reh'g denied,* 352 U.S. 1019, 77 S.Ct. 552, 1 L.Ed.2d 562 (1957), *reh'g denied,* 364 U.S. 898, 81 S.Ct. 218, 5 L.Ed.2d 192 (1960).

*Summary Judgment*

■ Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact and, as a matter of law, the moving party is entitled to judgment. RUSCC 56; *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the nonmovant's case. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences runs. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. de-*

---

**3.** In the late 1970's, John Leahy, Internal Revenue Service (IRS) agent, conducted a Taxpayer Compliance Measurement Program Examination (TCMP audit) regarding the McLennans' farm loss deductions. The IRS audit resulted in no disallowance or adjustment of the McLen-

nans' deductions. In addition, the IRS did not challenge farm loss deductions taken by the McLennans for the 1986 tax year after an audit was performed by IRS agent Daniel A. Gazzo. Affidavit of Frank P. DeMarco, ¶ 3–12.

*nied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

To grant summary judgment in the present case, the court must determine, as a matter of law: (1) whether plaintiff made a charitable contribution by granting the Conservancy a scenic easement in a portion of the property; and (2) whether there is an adequate basis for defendant's setoff defense.

### Discussion

Plaintiff's entitlement to a charitable contribution deduction is governed by 26 U.S.C. § 170. Section 170 provides:

> [T]here shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year.

In turn, § 170(c) requires a:

> Contribution or gift to or for the use of—
>
> \* \* \* \* \* \*
>
> (2) A corporation ...
> (A) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes;
> (B) no part of the net earnings of which inures to the benefit of any private shareholder or individual.

Section 170(f)(3)(A) sets forth a general rule that a taxpayer must transfer an entire interest in a property in order to qualify for a charitable contribution:

> (3) Denial of deduction in case of certain contributions of partial interests in property.
> (A) In general. In the case of a contribution (not made by the transfer of a trust) of an interest in property which consists of less than the taxpayer's entire interest in such property, a deduction shall be allowed under this section if such interest had been transferred in trust. For purposes of this subparagraph, a contribution by a taxpayer of the right to use property shall be treated as a contribution of less than the taxpayer's entire interest in such property.

Section 170(f)(3)(B) carves out four exceptions to this general rule:

> (B) Exceptions. Subparagraph (A) shall not apply to a contribution of—
> (i) a remainder interest in a personal residence or farm,
> (ii) an undivided portion of the taxpayer's entire interest in property,
> (iii) a lease on, option to purchase, or *easement with respect to real property granted in perpetuity to an organization described in subsection (b)(1)(A) exclusively for conservation purposes,* or
> (iv) a remainder interest in real property which is granted to an organization described in subsection (b)(1)(A) exclusively for conservation purposes.

[Emphasis added.] Section 170(f)(3) as amended by § 2124(e), Tax Reform Act of 1976, Pub.L. 94–455, 90 Stat. 1919.

The Treasury Regulations provide the following guidance on the deductibility of an easement grant to a charitable concern:

> [A] charitable contribution of an open space easement in gross in perpetuity shall be considered a contribution of an undivided portion of the donor's entire estate in property to which section 170(f)(3)(A) does not apply. For this purpose an easement in gross is a mere personal interest in, or right to use the land of another; it is not supported by a dominant estate, but is attached to, and vested in, the person to whom it is granted. Thus, for example, a deduction is allowed under section 170 for the value of a restrictive easement gratuitously conveyed to the United States in perpetuity, whereby the donor agrees to certain restrictions on the use of his property, such as, *restrictions on the type and height of buildings that may be erected, the removal of trees, the erection of utility lines, the dumping of trash, and the use of signs.*

[Emphasis added.] Treas.Regs. § 1.170A–7(b)(1)(ii).

Defendant raises several affirmative defenses to plaintiff's claim for a charitable deduction under § 170 and, alternatively, to plaintiff's claim for a tax refund for the years in question. The court will address each defense separately below.

## A. The Western Pennsylvania Conservancy

■ Defendant contends that the Conservancy's "scenic easement program" conferred direct benefits on plaintiff and other grant participants. According to defendant, the Conservancy committed private inurement and ceased to be a charitable organization under § 170(c)(2). Defendant essentially requests the court to revoke the Conservancy's charitable status.

■ Section 7428 of the Code vests jurisdiction in the Claims Court to grant declaratory relief in a "case of actual controversy" involving IRS denial or revocation of an organization's tax exempt charitable status. An organization seeking initial or continual charitable qualification may file an action in this court after exhausting available administrative remedies. 26 U.S.C. § 7428(b); *Change–All Souls Housing Corp. v. United States*, 229 Ct.Cl. 380, 671 F.2d 463 (1982); *St. John's Orphanage, Inc. v. United States*, 16 Cl.Ct. 299 (1989). For an "actual controversy" to exist, there must be an IRS decision which directly affects an organization's "classification or qualification" for tax exempt treatment. *Baptist Hospitals, Inc. v. United States*, 851 F.2d 1397 (Fed.Cir. 1988). In the present case, the IRS has not revoked the Conservancy's tax exempt status. In fact, the IRS has recognized the Conservancy to be a charitable organization within the meaning of §§ 501(c)(3) and 170(c)(2) since 1951.[4] Defendant, therefore, seeks reversal of an IRS decision in the absence of an "actual controversy." As there is no adverse IRS determination affecting the Conservancy's charitable status, the court lacks jurisdiction over this non-justiciable issue. The court further notes that § 7428 only applies to organizations "the qualification or classification of which is at issue." 26 U.S.C. § 7428(b)(1); *Church of the New Testament v. United States*, 783 F.2d 771 (9th Cir.1986). Section 7428 is designed to afford aggrieved organizations the opportunity for judicial review of IRS charitable status determinations. Section 7428 does not contemplate suits brought by the United States challenging an organization's tax exempt status. In short, defendant does not advance a claim redressable in this court.

## B. Transfer of Value

■ Defendant maintains that the McLennans retained dominion and control over the easement property and, therefore, transferred nothing of value to the Conservancy. Plaintiff has reserved the following rights in the easement property:

1) the right to subdivide the easement property into eight parcels;

2) an unrestricted right to build four new family residences and roads to these residences;

3) the right to cut timber to accommodate the residential structures; and

4) the right to farm portions of the property.

The easement agreement imposes restrictions on the following activities:

1) industrial or commercial activity;

2) the placement of mobile homes, camping accommodations, fences, signs, or advertising materials on the property;

3) the construction of roads or erection of utility lines (except those necessary for residential purposes);

4) the removal of top soil, sand, gravel, rocks, or minerals; and

5) filling, excavating, dredging, mining the property (except certain methods of deep coal mining), and drilling (except for oil and gas).

In addition, the easement grant provides for the failure of the scenic easement upon condemnation of the underlying property. Any compensation for a taking action is payable exclusively to plaintiff.

By imposing the above restrictions on the use of the protected property, plaintiff transferred "value" to the Conservancy through the scenic easement conveyance. Read in context with Treas.Regs.

---

**4.** Plaintiff's motion, exs. B and C. The court also notes that the Conservancy is listed in IRS publication No. 78, *Cumulative List of Organiza-* *tions Described in Section 170(c) of the Internal Revenue Code of 1986.* Affidavit of Thomas M. Schmidt, ¶ 7.

§ 1.170A–7(b)(ii), the easement transferred a "fraction of each substantial interest in the property," including mineral rights, building rights, and the right to place certain structures on the property. Treas. Regs. § 1.170A–7(b)(1)(i). These restrictions enabled the Conservancy to adequately preserve the scenic quality of the easement property. Furthermore, the fact that the easement may revert to plaintiff upon a taking of the easement property does not render the easement valueless. The language of the easement agreement states that the McLennans "give, grant, bargain, sell, and convey unto the [Conservancy], its successors and assigns, forever an easement in perpetuity." As the grantee of the scenic easement, the Conservancy is placed in the role of public fiduciary. In the event of a taking action by the government, the easement and the underlying land remains entrusted to the public. In other words, the easement cannot revert back to plaintiff. The court, therefore, determines that the scenic easement places material limitations on plaintiff's use of the property as required by Treas.Regs. § 170A–7(b)(1)(ii).

The court's conclusion is consistent with applicable case law. In *Fannon v. Commissioner*, 56 T.C.M. 1587 (1989), the Tax Court determined the fair market value of a charitable contribution of a scenic easement which imposed the following restrictions on the property:

(1) no dumping of refuse;

(2) restrictions on signs and outdoor advertising;

(3) no subdivision of parcels less then 45 acres each;

(4) only selective cuttings of timber;

(5) restrictions on the number and type of structures that may be constructed on each parcel in the event of subdivision and;

(6) restrictions on industrial and commercial activities.

*See also Fannon v. Commissioner*, 52 T.C.M. 1113 (1986) *modified and remanded on other grounds*, 842 F.2d 1290 (4th Cir.1988) (value assessment of easement containing restrictions nearly identical to above cited case). Furthermore, in *Todd v.*

*United States*, 617 F.Supp. 253 (W.D.Pa. 1985), the court ascertained the value of a scenic easement contribution to the Conservancy made by plaintiff's neighboring landowners. Although the scenic easement merely restricted the property owner's right to divide the protected property into no more than five parcels, there was no dispute that the scenic easement constituted a charitable contribution under § 170.

Similarly, in *Symington v. Commissioner*, 87 T.C. 892 (1986), the Tax Court found that several taxpayers were entitled to a charitable deduction for their grant of a scenic easement despite retention of the right to a single family dwelling, various farm buildings, guest houses, servants' lodgings, field hands' quarters, a swimming pool, and a garage on the easement property. In addition, the court in *Stotler v. Commissioner*, 53 T.C.M. 973 (1987), concluded that a taxpayer was entitled to a charitable contribution deduction for conveying a scenic easement which reserved condemnation rights with the taxpayer in the event of a government taking. Further, the IRS stated in a Revenue Ruling that a taxpayer made a charitable contribution by donating an easement in beachfront property, despite reservation of all mineral rights, the right of access to open water, and the right to a channel through the property to adjacent land. IRS Rev.Ruling 75–373, 1975–2 C.B. 77.

In general, courts have recognized that a scenic easement by nature reserves considerable property interests in the grantor. It follows that a scenic easement donor transfers "value" despite retention of substantial rights in the protected property. The court, therefore, concludes that plaintiff surrendered sufficient rights under the easement agreement to create a "transfer of value" under § 170.

C. *Donative Intent/Exclusive Conservation Purpose*

 Defendant asserts that the McLennans lacked the necessary donative intent in granting the Conservancy the scenic easement and, therefore, did not qualify for a charitable deduction. In general, the

Code permits charitable deductions for bona fide gifts irrespective of a taxpayer's motivations. *Sheppard v. United States,* 176 Ct.Cl. 244, 361 F.2d 972 (1966) (taxpayer entitled to deduction even though donation was made for the exclusive purpose of obtaining a tax benefit). However, the taxpayer must possess the requisite donative intent, that is, the taxpayer must not expect a substantial benefit as a *quid pro quo* for the transfer. *Transamerica Corp. v. United States,* 15 Cl.Ct. 420, 465 (1988), *aff'd* 902 F.2d 1540 (Fed.Cir.1990). In determining whether a taxpayer has made a contribution with an expectation of commensurate financial return, courts have "customarily examined the external features of the transaction in question." *Hernandez v. Commissioner,* 490 U.S. 680, 690, 109 S.Ct. 2136, 2144, 104 L.Ed.2d 766 (1989).

Defendant additionally maintains that the scenic easement was not transferred for an exclusive conservation purpose as required under § 170(f)(3). Section 170(f)(3)(C) provides the following definition of "conservation purpose":

(C) Conservation purposes defined. For purposes of subparagraph (B), the term "conservation purposes" means—

(i) preservation of land areas for public outdoor recreation or education, or scenic enjoyment.

(ii) the preservation of historically important land areas or structures; or

(iii) the protection of natural or environmental systems.

Courts have generally inquired into both the intent of the donor in making a particular conveyance and the intentions of the donee in accepting the contribution when deciding whether a transfer of property was made "exclusively for conservation purposes." *Ottawa Silica Co. v. United States,* 699 F.2d 1124 (Fed.Cir.1983); *Taynton v. United States,* 60–1 USTC ¶ 945 (E.D.Va.1960).

 The easement agreement did not require the Conservancy to compensate the McLennans for conveying the scenic easement. Plaintiff avers that the McLennans

"granted the scenic easement to the Conservancy for the purpose of protecting the area ... from further development so as to preserve the beauty and environmental systems of that area."[5] Defendant counters that plaintiff granted the scenic easement to the Conservancy with the expectation of preserving property values and achieving desired zoning restrictions for the property. After considering Mrs. McLennan's testimony and the scenic easement document, the court is unable to determine whether the benefits which accrued to plaintiff, aside from any tax savings, were merely incidental to a greater public conservation benefit derived from the scenic easement conveyance. The court, therefore, concludes that the facts underlying the issue of donative intent/exclusive conservation purpose warrant further ventilation and that the issue is inappropriate for summary judgment. *See Philadelphia Suburban Corp. v. United States,* 217 Ct.Cl. 705 (1978). Plaintiff bears the burden of proving at trial that the McLennans transferred the easement to the Conservancy with the requisite donative intent and exclusive conservation purpose.

### D. *Offset*

Defendant seeks to offset any refund due plaintiff for tax overpayment, contending that the McLennans' 1980 and 1981 farm losses were not deductible because their cattle breeding operation at Stornoway Farms was not an activity engaged in for profit. In *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932), the Supreme Court permitted the Commissioner of Internal Revenue to recompute tax liability to offset a refund claim even though the statute of limitations would otherwise bar an independent IRS claim against the taxpayer. The leading progeny of *Lewis v. Reynolds* in this court's predecessor is *Dysart v. United States,* 169 Ct.Cl. 276, 340 F.2d 624 (1965), and *Missouri Pacific Railroad Co. v. United States,* 168 Ct.Cl. 86, 338 F.2d 668 (1964). The court in *Missouri Pacific Railroad*

---

5. Affidavit of Elinor P. McLennan, ¶ 6.

and *Dysart* permitted the Commissioner to offset a tax refund involving the same taxpayer, the same tax, and the same taxable year. In *Missouri Pacific Railroad,* the court stated that the taxpayer has the burden of proving the correctness of an item the government seeks to challenge and set-off. However, the government must first demonstrate that there is a reasonable basis in fact or in law for its setoff defense before the burden of proof shifts to the taxpayer. The court further stated:

> The right of allowing an offset under these situations is an equitable right given to the government based on equitable principles and, as such, should not be abused. If properly used, it should provide the government with a "shield" to prevent the unjust enrichment of a taxpayer, but if used as a "sword" it would under certain circumstances have the contrary effect.

168 Ct.Cl. at 91, 338 F.2d at 672.

In *Mahoney v. United States,* 223 Ct.Cl. 713, 1980 WL 4712 (1980), the court dismissed several setoff claims which the government had not challenged after auditing the taxpayer, concluding that the government lacked "concrete and positive" proof that the claims were reasonably based. The court determined that the government was merely suspicious that plaintiff improperly claimed these deductions. Defendant provided no factual support for these defenses and sought extensive discovery to substantiate the defenses. The court reasoned that mere suspicion by the government, without more, does not satisfy defendant's threshold burden under *Missouri Pacific Railroad.* To decide otherwise, the court stated, would permit the government to abuse the equitable offset principles by using the defense as a "sword" rather than a "shield." 223 Ct.Cl. at 718–19. The court warned that offset defenses should not be tolerated when used to harass taxpayers from pursuing legitimate refund claims.

Since a tax refund suit involves a *de novo* determination of whether plaintiff has overpaid taxes during the period in question, the court need not defer to conclusions of law reached by the IRS which impact the government's offset defense. *Lewis v. Reynolds,* 284 U.S. at 283, 52 S.Ct. at 146. In the instant case, the parties agree that the farm loss deductions and the scenic easement contribution involve the same taxpayer, the same tax (income), and the same tax years (1980 and 1981). Defendant maintains that the McLennans' consecutive losses in their cattle breeding activities over a 6–year period provide ample ground for the government's offset defense. Defendant relies entirely upon the profit and loss activities of the Stornoway Farms reported in plaintiff's tax returns.[6]

In *Mahoney,* the government based its offset defense on the following evidence presented by counsel through affidavit:

> I am familiar with other taxpayers' cattle investments with Stratford of Texas, Inc., and am aware of tax problems which have resulted from these investments. The Internal Revenue Service takes the position that taxpayers in these investments are not entitled to any feed or other service deductions on various grounds * * * [stating three]. Thus, it appeared reasonable to conclude that the deductions have been erroneously claimed and allowed.
>
> \* \* \* \* \* \*
>
> I was familiar with similar oil and gas tax investments and, furthermore, aware that loss deductions of such investments may be improper on ... [three alternative grounds].

223 Ct.Cl. at 716–17, quoting defense counsel's affidavit.

The Court of Claims concluded that defendant failed to produce "positive and concrete evidence" of the setoff defense, stating:

---

6. Defendant provides the court with the following schedule of plaintiff's farm income and expenses:

| Year | Farm Income | Farm Expenses |
|------|-------------|---------------|
| 1977 | $23,623.00 | $146,225.00 |
| 1978 | $37,343.00 | $159,157.00 |
| 1979 | $40,404.00 | $164,419.00 |
| 1980 | $31,883.00 | $201,653.00 |
| 1981 | $64,753.00 | $206,741.00 |
| 1982 | $39,513.00 | $252,027.00 |

What all this adds up to is that counsel was suspicious of these kinds of deductions because his experience as a tax lawyer, led him to believe that often they were improperly claimed, but it does not appear he attached any weight to the allowance of them, in plaintiff's case, by the Commissioner.

\* \* \* \* \* \*

Neither the label "tax shelter" nor the fact that a partnership may produce losses in a given year which appear out of proportion to the partner's investment necessarily indicate that the resulting loss deductions are improper.

\* \* \* \* \* \*

[E]very fisherman lowers his hook where he thinks there are most likely to be fish, but his opinion is not "positive and concrete evidence" that fish are there. If the methods employed against plaintiff are not intended to discourage him and others from suing for refunds of taxes, this must, if tolerated, be their inevitable effect.

\* \* \* \* \* \*

The revenue agent can poke into everything without being required to have even a reasonable suspicion that anything is not as it should be. A taxpayer should not be subjected to this more than once.

223 Ct.Cl. at 718–19.

■ As in *Mahoney,* defendant falls short of establishing the reasonableness of its offset defense. Contrary to defendant's assertion, none of the cases cited by the government stand for the proposition that repeated business losses demonstrate, *ipso facto,* a lack of profit motive. Rather, the history of profit and loss activity is only one of many factors to be considered when determining whether the activity was en- gaged in for profit. Treas.Regs. § 1.183–2(b). Furthermore, the Treas. Regs. require examination of a taxpayer's loss history in order to discern the reasons behind the sustained losses. For example, successive business losses are not indicative of lack of profit motive where the business is in a start-up phase or experiences unforeseen or fortuitous circumstances beyond the taxpayer's control.[7] Treas.Regs. § 1.183–2(b)(6). In addition, a series of farm losses is not dispositive where similarly situated farmers recognize no profit for the tax years in question. Treas.Regs. § 1.183–2(c)(4). It is clear that while consecutive losses in a business venture may call into question a taxpayer's profit expectancy, these losses, taken alone, amount to no more than a mere suspicion that the venture was not an activity engaged in for profit. In short, the fact that a taxpayer sustains successive business losses is not "concrete and positive evidence" that the taxpayer expected no profit from the activity.

■ The court feels that defendant bears the initial burden of coming forth with additional facts to explain why plaintiff's cattle breeding losses illustrate a lack of profit motive.[8] Aside from these losses, defendant has produced nothing of substance to support the proposed offset. The court, therefore, concludes that defendant has not provided sufficient evidence to demonstrate that its offset defense has a reasonable basis in fact or law. To determine otherwise would extend the equitable principle of offset beyond that intended by the court in *Missouri Pacific Railroad.* Defendant has thus not met its burden and is precluded from raising the offset defense at trial.

*Conclusion*

For the foregoing reasons, the court denies defendant's motion for partial sum-

---

7. In fact, the court notes that a purebred cattle and farm operation may not become profitable for several years. In addition, cattle breeding ventures are susceptible to unforeseen circumstances, including depressed markets, which may produce successive losses. *See Dennis v. Commissioner,* 47 T.C.M. 815, 821 (1984); *Arrington v. Commissioner,* 47 T.C.M. 270, 273 (1983).

8. The government's burden of production can be no less given the taxpayer's burden of proving that an item challenged by way of setoff was in fact properly deducted. *Missouri Pacific Railroad v. United States,* 168 Ct.Cl. 86, 338 F.2d 668 (1964).

mary judgment and grants plaintiff's motion in part. The court concludes that plaintiff transferred a valuable scenic easement to a charitable concern on November 10, 1980. The court will conduct a trial on the merits in Washington, D.C., on May 20, 1991, regarding the following issues: (1) whether plaintiff conveyed the scenic easement to the Conservancy with the requisite donative intent and an exclusive conservation purpose; and (2) the fair market value of the scenic easement transferred to the Conservancy.